J-A12038-19

2019 PA Super 320

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LEE ANDREW MOORE | : | |
| | : | |
| Appellant | : | No. 1566 WDA 2018 |

Appeal from the Judgment of Sentence Entered March 26, 2018
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0000378-2012

BEFORE:  BENDER, P.J.E., DUBOW, J., and FORD ELLIOTT, P.J.E.

OPINION BY DUBOW, J.:                                      FILED OCTOBER 23, 2019

Appellant, Lee Andrew Moore, appeals from the Judgment of Sentence entered on March 26, 2018.  At issue in this case is whether Acts 10 and 29 of 2018 ("SORNA II")[1], which require the Pennsylvania State Police ("PSP") to disseminate via the Internet registration information about sex offenders, violate the Ex Post Facto Clause of the U.S. Constitution.  In light of our Supreme Court's decision in Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017), we conclude that the Internet dissemination provision of SORNA II violates the federal prohibition against ex post facto laws.  Accordingly, we affirm Appellant's Judgment of Sentence, but direct the removal of his entry from the state police sex offender website.

We need only state briefly the underlying facts and procedural history in order to analyze properly the constitutionality of the public dissemination

_____

[1] Act of Feb. 21, 2018, P.L. 27, No. 10 (Act 10); Act of June 12, 2018, P.L. 140, No. 29 (Act 29).

provisions of SORNA II. Between 2004 and 2008, Appellant sexually abused his former stepson. See Commonwealth v. Moore, 2009 WDA 2013, at 1 (Pa. Super. filed Dec. 8, 2014) (unpublished memorandum), appeal denied, 117 A.3d 296 (Pa. 2015). In July 2013, following a jury trial, Appellant was convicted of Involuntary Deviate Sexual Intercourse, Unlawful Contact with Minor, Statutory Sexual Assault, Corruption of Minors, and Indecent Assault.[2] Id. at 2. The trial court sentenced Appellant to an aggregate term of nine to twenty-five years of imprisonment. Id. Appellant timely appealed, but this Court denied relief. Id. at 12.

Thereafter, Appellant sought collateral relief, challenging the legality of his sentence. In February 2018, the lower court granted Appellant relief and vacated his Judgment of Sentence. See PCRA Ct. Order, 2/2/18. Following a hearing, the lower court imposed a new aggregate sentence of five and one-half to seventeen years of incarceration followed by twelve years of probation. N.T. Sentencing, 3/26/18, at 40-42. The trial court also notified Appellant that SORNA II required that after he is released from prison, he must register as a convicted sexual offender with the PSP for the remainder of his life.

Appellant timely filed a Post-Sentence Motion, challenging his obligation to register as a convicted sexual offender. Post-Sentence Motion, 4/4/18. According to Appellant, the registration requirements set forth in SORNA II include several punitive elements not in effect at the time he committed his

_____

[2] 18 Pa.C.S. §§ 3123(a)(7), 6318(a)(1), 3122.1(a), 6301(a)(1), and 3126(a)(8), respectively.

crimes. Id. at 2 (unpaginated). Thus, according to Appellant, the requirements violated the federal constitutional ban on ex post facto laws. See id. Following argument, the lower court denied relief. Sentencing Ct. Order, 10/3/18.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. In its responsive Opinion, the lower court rejected Appellant's constitutional claim, concluding that SORNA II was not punitive in either intent or effect. See Sentencing Ct. Op., 12/12/18, at 7-12.

Appellant raises the following issues on appeal:

1. [Whether] the sex offender registration provisions established by Acts 10 and 29 of 2018 [are] unconstitutional as applied to an individual whose offense dates pre-dated SORNA[II; and]

2. [Whether] the punitive registration and publication provisions established by Acts 10 and 29 of 2018 [are] severable[.]

Appellant's Br. at 6.

Although broadly worded, Appellant's first issue presents a narrow challenge to the manner in which SORNA II requires the PSP to disseminate the information that a sex offender provides to the PSP pursuant to 42 Pa.C.S. § 9799.63 ("Section 9799.63").[3] Appellant's Br. at 10. Section 9799.63 provides in relevant part:

> The Commissioner of the [PSP] shall . . . [d]evelop and maintain a
> system for making the information described in subsection (c) publicly

_____

[3] To be clear, Appellant does not challenge the registration and reporting obligations required by SORNA II.

> available by electronic means so that the public may, without limitation, obtain access to the information via an Internet website to view an individual record or the records of all sexually violent predators, lifetime registrants and other offenders who are registered with the [PSP].

42 Pa.C.S. 9799.63(b).

Essentially, Appellant asserts that Section 9799.63 is punitive because the provision is akin to traditional forms of punishment, adversely affects his reputation, and is excessive in relation to the General Assembly's remedial intentions. See Appellant's Br. at 9-15. This punitive impact, according to Appellant, renders Section 9799.63 unconstitutional when applied retroactively to offenders such as Appellant, whose criminal conduct preceded the enactment of Section 9799.63. See id.

We consider Appellant's claim, mindful that lawfully enacted statutes are presumptively constitutional. Commonwealth v. Lee, 935 A.2d 865, 876 (Pa. 2007); Commonwealth v. Williams, 832 A.2d 962, 973 (Pa. 2003). A constitutional challenge presents a question of law. Commonwealth v. Molina, 104 A.3d 430, 441 (Pa. 2014). Thus, our standard of review is de novo, and our scope of review is plenary. Id.; Lee, 935 A.2d at 876.

## Federal Ex Post Facto Claim

The constitutional prohibition against ex post facto laws ensures "'fair warning' about what constitutes criminal conduct, and what the punishments for that conduct entail." Muniz, 164 A.3d at 1195. Thus, "[c]ritical to relief under the Ex Post Facto Clause is not an individual's right to less punishment,

but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Id. (quoting Weaver v. Graham, 450 U.S. 24, 30 (1981)).

To determine whether Section 9799.63 constitutes retroactive punishment, we employ a two-step inquiry. Smith v. Doe, 538 U.S. 84, 92 (2003); Muniz, 164 A.3d at 1208; Williams, 832 A.2d at 971. Initially, we must ascertain whether the legislative intent was to enact a civil, remedial scheme or impose punishment. Smith, 538 U.S. at 92. If the intent was non-punitive, then we proceed to the second step and consider whether the provision is "so punitive either in purpose or effect as to negate the legislature's non-punitive intent." Muniz, 164 A.3d at 1208 (quoting Williams, 832 A.2d at 971). "[O]nly the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Smith, 538 U.S. at 92 (internal quotation marks and citation omitted).

Legislative Intent of Section 9799.63

In 2011, the Pennsylvania General Assembly passed the Sex Offender Registration and Notification Act ("SORNA I"), Act of Dec. 20, 2011, P.L. 446, No. 111, as amended, 42 Pa.C.S. §§ 9799.10 to 9799.41 (effective Dec. 20, 2012) in order to comply with the Adam Walsh Child Protection and Safety Act of 2006 (Adam Walsh Act), Pub. L. 109-248, as amended, 34 U.S.C. §§ 20911, et seq. In 2017, our Supreme Court determined that the retroactive

application of SORNA I violated the federal Ex Post Facto Clause. Commonwealth v. Muniz, 164 A.3d 1189, 1218 (Pa. 2017).

In response, the General Assembly passed SORNA II, dividing SORNA II into two distinct subchapters—Subchapter H, which applies to "individuals who committed a sexually violent offense on or after December 20, 2012, for which the individual was convicted[,]" 42 Pa.C.S. § 9799.11(c), and Subchapter I, which applies to individuals who committed a sexually violent offense "on or after April 22, 1996, but before December 20, 2012," and whose period of registration has not yet expired or whose registration requirements under a former sexual offender registration law have not expired. 42 Pa.C.S. § 9799.52.

With respect to the provisions that require the PSP to disseminate information about the sex offender via the Internet, the legislature expressed its intention that "public safety will be enhanced by making information about . . . [various sex offenders] available to the public through the Internet and electronic notification." 42 Pa.C.S. §9799.63(a). The legislature further found that "[k]nowledge of whether a person is a . . . [convicted sex offender] could be a significant factor in protecting oneself and one's family members . . . from recidivist acts by [sex offenders.]" Id. The legislature concluded that the "technology afforded by the Internet and electronic notification would make this information readily accessible to parents and private entities, enabling them to undertake appropriate remedial precautions to prevent or avoid placing potential victims at risk." Id. Most importantly to our analysis

of the legislative purpose in mandating dissemination via the Internet, the legislature stated that public access to the information that the sex offender provides to PSP "is intended solely as a means of public protection and shall not be construed as punitive." Id.

We accord a legislature considerable deference to the intent stated in its legislative proclamation. Smith, 538 U.S. at 93. The statutory text set forth above is clear and defines a non-punitive objective—assure public safety by disseminating information about sexual offenders. Moreover, our Supreme Court has interpreted similar language as indicative of the General Assembly's remedial intent. See Muniz, 164 A.3d at 1209-10 (addressing similar declaration of policy in SORNA I, Subchapter H)[4]; Williams, 832 A.2d at 971-72 (Megan's Law II); Commonwealth v. Gaffney, 733 A.2d 616, 619 (Pa. 1999) (Megan's Law I). For these reasons, we conclude the General Assembly's intent was to create a civil, remedial scheme.

Legislative Effect

We now consider whether the Section 9799.63 is sufficiently punitive in effect to overcome the General Assembly's non-punitive purpose. See Muniz, 164 A.3d at 1210. This analysis involves examining factors identified by the United States Supreme Court. See Williams, 832 A.2d at 972-73

_____

[4] Ultimately, the Muniz Court determined that SORNA I was punitive in effect. 164 A.3d at 1218. In its legislative response in SORNA II, the General Assembly declared its intention to address the Muniz holding. See 42 Pa.C.S. § 9799.51(b)(4). We view this effort to address the punitive effect of its prior legislation as further evidence of the General Assembly's remedial intent.

(citing Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)). The Mendoza-Martinez factors include whether:

1. The sanction involves an affirmative disability or restraint;

2. The sanction has historically been regarded as punishment;

3. The sanction comes into play only on a finding of scienter;

4. The operation of the sanction will promote the traditional aims of punishment—retribution and deterrence;

5. The behavior to which the sanction applies is already a crime;

6. An alternative purpose to which the sanction may rationally be connected is assignable for it; and

7. The sanction appears excessive in relation to the alternative purpose assigned.

Id. at 973 (citation omitted). While this list is not exhaustive, and no one factor is dispositive, the factors provide "useful guideposts" in determining whether a remedial provision is nonetheless punitive in effect. Id. at 972 (citation omitted).

We will analyze these seven factors in terms of the effect that the mandate of Section 9799.63, requiring dissemination of the sex offender's registration information via the Internet, has on the sex offender. For ease of analysis, we first address the second factor.

Whether the Sanction has Been Historically Treated as Punishment

We first examine whether the dissemination via the Internet of the sex offender's registration information, which includes his convictions and other personal information, has the effect that a traditional punishment would have on an offender.

In Muniz, the Pennsylvania Supreme Court specifically addressed the provision in SORNA I that directs the PSP to disseminate via the Internet the sex offender's registration information. 164 A.3d at 1208 (citing Subchapter H, 42 Pa.C.S. § 9799.28). The Pennsylvania Supreme Court reasoned that the dissemination of the registration information via the Internet is equivalent to public shaming because it exposes offenders to ostracism and harassment without any mechanism to prove rehabilitation:

> Yesterday's face-to-face shaming punishment can now be accomplished online, and an individual's presence in cyberspace is omnipresent. The public [I]nternet website utilized by the Pennsylvania State Police broadcasts worldwide, for an extended period of time, the personal identification information of individuals who have served their "sentences." This exposes registrants to ostracism and harassment without any mechanism to prove rehabilitation—even through the clearest proof.

Id. at 1212 (quoting Commonwealth v. Perez, 97 A.3d 747, 765-66 (Donohue, J., concurring))(emphasis added). Thus, the Court concluded, "SORNA's publication provisions—when viewed in the context of our current [I]nternet-based world—[are] comparable to shaming punishments." Id. at 1213 (distinguishing Smith, 538 U.S. at 101); contra Williams, 832 A.2d at 976-77 (rejecting analogy between public dissemination of offender information and colonial-era shaming punishments).[5]

_____

[5] We note that the United States Supreme Court in Smith concluded that dissemination via the Internet is not equivalent to public shaming, but rather "more analogous to a visit to an official archive of criminal records than it is

Section 9799.63 is nearly identical to the Internet dissemination provision in SORNA I. Both Subchapters direct the PSP to develop and maintain a system to disseminate via an Internet website registration information about sexual offenders to the public. 42 Pa.C.S. §§ 9799.28(a)(1), 9799.63(b)(1). Additionally, the information compiled and disseminated is the same, including name and aliases, year of birth, residential and employment addresses, photographs and physical descriptions, license plate and description of the offender's vehicle, compliance with registration provisions, and details of the sex offender's crimes. 42 Pa.C.S. §§ 9799.28(b), 9799.63(c). Both Subchapters require the website to include a searchable database of this information. Thus, for example, a member of the public can query the website database to obtain offender information in any zip code or geographic radius. 42 Pa.C.S. §§ 9799.28(a)(1)(i), 9799.63(b)(1). Finally, both Subchapters require that the information shall continue to be available for the entirety of an offender's registration. 42 Pa.C.S. §§ 9799.28(e), 9799.63(d).

In light of these similarities, especially in terms of the broad method of dissemination, we conclude that Muniz requires a finding that the

_____

to a scheme forcing an offender to appear in public with some visible badge of past criminality." 538 U.S. at 99. The Pennsylvania Supreme Court in Muniz, however, recognized that "Smith was decided in an earlier technological environment." 164 A.3d at 1212. We are bound by this finding of the Pennsylvania Supreme Court in Muniz.

dissemination provision of Section 9799.63 is analogous to traditional public shaming, a historic form of punishment. Thus, we conclude that this factor weighs in favor of finding the effect of the dissemination provision of Subchapter I to be punitive. See Muniz, 164 A.3d at 1213.[6]

### Affirmative Disability or Restraint

We next address whether the dissemination via the Internet of the sex offender's registration information imposes an affirmative disability or restraint that adversely affects a sex offender's reputation. See, e.g., Appellant's Br. at 12 (asserting Section 9799.63 punishes his reputation), 14 (asserting the provisions "infringe upon [his] right to reputation").

It is clear that criminal punishment imposes a restraint on an individual's liberty interests. In Williams, our Supreme Court suggested that "an affirmative disability or restraint is some sanction approaching the infamous punishment of imprisonment." 832 A.2d at 974 (internal quotation marks and

_____

[6] The Supreme Court in Muniz applied the Mendoza-Martinez factors to SORNA I as a whole while we are applying the Mendoza-Martinez factors solely to the dissemination provision of SORNA II. When the Supreme Court in Muniz analyzed whether the "sanction" SORNA I imposed had been historically considered a punishment, the Supreme Court considered the effect of the entire statute, concluding that (1) the dissemination provisions were comparable to shaming punishments, and (2) the registration provisions were "akin to probation." 164 A.3d at 1213. Because we are analyzing only the constitutionality of the dissemination provision of SORNA II, we need not address whether the registration provisions in SORNA II are "akin to probation." Thus, for example, we do not consider the duration of an offender's registration, or whether SORNA II requires in-person reporting and how often, or other provisions not required by Section 9799.63.

citation omitted). However, punishment requires no physically restrictive component. For example, criminal fines are punitive even though the fines impose an economic, not a physical, restraint. See, e.g., Commonwealth v. Church, 522 A.2d 30, 34 (Pa. 1987) ("[T]he primary purpose of a fine or a penalty is twofold; to punish violators and to deter future or continued violations[.]"); see also, e.g., United States v. Lovett, 328 U.S. 303, 315-18 (1946) (restraint on compensation earned through federal employment deemed punitive).

Previously, our Supreme Court has deemed restraints imposed on an offender's reputation by public notice provisions to be insignificant or merely collateral. See, e.g., Williams, 832 A.2d 973-74 (recognizing that public notice provisions of Megan's Law II "temper" an offender's liberty interest but declining to credit this "secondary effect" as punitive). This analysis was rooted firmly in United States Supreme Court precedent. See Smith, 538 U.S. at 101 ("Although the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record."); but see id. at 115 (Ginsburg, J., dissenting) (concluding that the impact on reputation is a significant restraint because public notification exposes the offender to "profound humiliation and community-wide ostracism").

Again, we are bound by our Supreme Court's decision in Muniz. The Supreme Court, in analyzing SORNA I, analogized the dissemination via the

Internet of a sex offender's registration information to public shaming and concluded that such dissemination was a punishment. 164 A.3d at 1213. Because this dissemination is a punishment, and punishment is a restraint, the Internet dissemination provision of SORNA II constitutes an affirmative restraint.

In so doing, the Muniz Court has brought Pennsylvania law in accordance with other states that have expressly found public dissemination provisions of sexual offender registration laws to constitute an affirmative disability or restraint. See, e.g., Wallace v. State, 905 N.E.2d 371, 380 (Ind. 2009) (concluding that the practical effects of the notification provisions impose substantial disabilities on registrants); Doe v. State, 189 P.3d 999, 1009-12 (Alaska 2008) (suggesting that public dissemination of offender status exposes registrants to "community obloquy and scorn").

We note further that the adverse impact to a sex offender's reputation, imposed purposefully as a consequence of conduct deemed criminal, is widespread. It is not limited to those individuals who would benefit from this information because they might reside or work in close proximity to the offender. Rather, the effect of this affirmative restraint extends to any person who has access to the Internet and who may obtain the registration information solely for gratuitous purposes. Thus, such harm is not merely collateral or incidental, but rather consequential and far-reaching.

Thus, we conclude that the effect of the dissemination via the Internet of the sex offender's registration information weighs in favor of finding that Section 9799.63 is punitive.

### Finding of Scienter

The parties suggest that this factor should receive little weight in our analysis. See Appellant's Br. at 11; Commonwealth's Br. at 14; Intervenor's Br. at 31-32.[7] The Supreme Court in Muniz found this "factor is of little significance in our inquiry." 164 A.3d at 1214. We agree.

### Traditional Aims of Punishment

Appellant asserts that Section 9799.63 serves the traditional aims of retribution and deterrence. Appellant's Br. at 11. For reasons discussed below, we agree.[8]

In Muniz, the Supreme Court specifically found that "the prospect of being labeled a sex offender accompanied by registration requirements and the public dissemination of an offender's personal information over the [I]nternet has a deterrent effect." 164 A.3d at 1215. The Supreme Court

_____

[7] In light of Appellant's constitutional challenge, the Pennsylvania Office of the Attorney General ("Intervenor") intervened in this matter. See Notice of Intervention, 3/21/2019 (citing Pa.R.A.P. 521).

[8] Intervenor notes that the Adam Walsh Act requires states to maintain a sex offender registry and publish otherwise personal information about offenders on a publicly accessible website. Intervenor's Br. at 34. Thus, Intervenor suggests, Section 9799.63 is necessary to comply with this federal mandate, and we should infer no punitive effect. See id. Intervenor cites no legal authority for this proposition, and we reject it. The constitutionality of a federal mandate does not hinge upon the government's funding decisions. Rather, we rely upon the holding in Muniz.

further concluded that SORNA I had a retributive effect because "the information SORNA allows to be released over the [I]nternet goes beyond otherwise publicly accessible conviction data[.]" Id.

Since the Supreme Court concluded that the Internet dissemination provision of SORNA I has both a deterrent and retributive effect, and the Internet dissemination provision of SORNA II is identical to the one in SORNA I, we must conclude that the Internet dissemination provision of SORNA II has both a deterrent and retributive effect. Thus, we conclude that this factor weighs in favor of finding the effect of Section 9799.33 to be punitive. See Muniz, 164 A.3d at 1216.

### Application to Criminal Behavior

This factor suggests that we consider "whether the behavior to which [the challenged legislation] applies [was] already a crime" prior to its passage. Williams, 832 A.2d at 973. It is apparent that this factor is relevant where a claimant asserts that new legislation has criminalized his previously innocent behavior, thus evoking the first category of ex post facto laws recognized by Justice Chase in his authoritative discussion. See Calder v. Bull, 3 U.S. 386, 390-91 (1798) (defining four categories of ex post facto laws, including "1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action.").

Section 9799.6 does not criminalize previously innocent behavior. Thus, we agree with the parties that this factor carries little weight in our analysis. See Appellant's Br. at 11; Commonwealth's Br. at 16; Intervenor's Br. at 35.

Non-punitive Alternate Purpose of Section 9799.33

We agree with the parties that there is a non-punitive, alternate purpose for Section 9799.33. In Williams, for example, our Supreme Court noted the "grave concerns over the high rate of recidivism among convicted sex offenders." 832 A.2d at 979. The Court then reasoned that public "awareness that a particular sexual predator lives near a home or school frequented by children will make a practical difference in avoiding predation." Id. (finding that Megan's Law II had a non-punitive purpose to which its provisions were rationally connected).

In Muniz, the Court recognized that "policy regarding such complex societal issues . . . is ordinarily a matter for the General Assembly." 164 A.3d at 1217. The Court highlighted the lack of scientific consensus on sexual offender recidivism rates, possibly portending an erosion in its usual deference. See id. Nevertheless, despite this ambivalence, the Court accepted the legislature's findings, concluded that the registration and reporting provisions of SORNA were aimed rationally at addressing the legislature's recidivism concerns, and therefore found that this factor weighed in favor of finding SORNA to be non-punitive. Id.

The General Assembly in SORNA II reiterated its finding that sexual offenders "pose a high risk of engaging in further offenses[.]" 42 Pa.C.S. § 9799.51(a)(2). Further, the legislature found that sexual offenders "have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government." 42 Pa.C.S. § 9799.51(a)(5).

Most important to our analysis is the General Assembly's intent to "[p]rotect the safety and general welfare of the people of this Commonwealth by providing for registration, community notification[,] and access to information regarding sexually violent predators and offenders who are about to be released from custody and will live in or near their neighborhood." 42 Pa.C.S. § 9799.51(b)(1). The legislature further determined to utilize a "publicly accessible Internet website" as a means of disseminating this relevant information. 42 Pa.C.S. § 9799.51(b)(2). According to the legislature, dissemination of this information via the Internet "could be a significant factor in protecting oneself and one's family members, or those in care of a group or community organization[.]" 42 Pa.C.S. § 9799.63(a).

We find that the public dissemination via the Internet of the sex offender's registration information is rationally related to the General Assembly's remedial goal of informing individuals about the identity and location of sex offenders in order to protect oneself and one's family members from the risk that the sex offender will recidivate. Absent new evidence sufficient to undermine our usual deference to the legislature's findings regarding recidivism rates, we conclude that this alternate purpose of the SORNA II favors finding the Internet dissemination provisions non-punitive.

Sanction is Excessive in Relation to Alternate Purpose

Appellant asserts that Section 9799.63 appears excessive in relation to its remedial purpose. Appellant's Br. at 12-15. Notably, Appellant contrasts the General Assembly's intent to disseminate relevant information to

individuals regarding sexual offenders "who are about to be released from custody and will live in or near their neighborhood" with its directive to the PSP to develop and maintain an openly accessible Internet website that publishes otherwise non-public information globally. See id. at 12.[9]

By posting information about offenders on the Internet, the information would be readily accessible to parents and private entities, "enabling them to undertake appropriate remedial precautions to prevent or avoid placing potential victims at risk." 42 Pa.C.S. 9799.63(a). While we share the legislature's concern about the importance of providing adequate information about sex offenders to individuals who may have contact with the offender, the effect of disseminating this information through the Internet means that individuals who do not "live in or near" the offender's neighborhood will have access to information about the offender.

_____

[9] In response, Intervenor notes that our inquiry "is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy." Intervenor's Br. at 37 (quoting Smith, 538 U.S. at 105). Thus, while conceding that certain offender information is not readily available from public sources, Intervenor nonetheless asserts that access to personal information, such as an offender's choice of vehicle or other descriptive information, such as an offender's scars or tattoos, is reasonable and will enable "citizens to identify sex offenders in their community." Id. at 38. However, we find Intervenor's reliance on Smith to be misplaced because the United States Supreme Court determined that the Alaska registration and notification provisions were not punitive. Id. The Pennsylvania Supreme Court has determined, however, that the public dissemination provision to SORNA I, which is identical to the public dissemination provision of SORNA II, to be punitive, and we are bound by that determination.

In fact, the statutory language mandating the creation of the PSP website demonstrates that the legislature intended that as many people as possible would have access to the offender's information. Section 9799.63(b)(1) requires the Commissioner of the PSP to develop a publicly accessible website "so that the public, without limitation, [can] obtain access to the information . . . to view an individual record or the records of all sexually violent predators, lifetime registrants and other offenders who are registered with the Pennsylvania State Police." Id. (emphasis added).

Because the dissemination of the sex offender's registration information is not limited to those individuals who could benefit from the information, but rather is expanded to any person who has Internet access, the open and readily accessible website is incongruous with the targeted purpose of protecting a community or neighborhood. SORNA II does not limit access to offender information within a certain geographical area, a community, or neighborhood. Any user of the website can obtain information about any offender regardless of the user's geographical proximity to the offender. Thus, if a person is not in proximity to an offender, the user's use of the information is beyond the legislative purpose of providing the information to protect individuals who might encounter the offender.

In contrast, when dealing with a Sexual Violent Predator (SVP), the legislature has crafted a targeted method requiring law enforcement to send a written notification with information about the SVP to those individuals who might encounter the SVP. 42 Pa.C.S. § 9799.62. In particular, law

- 19 -

enforcement must notify neighbors, child and youth agencies, school superintendents, day care centers and colleges and universities that a sexually violent offender is living in close proximity to the individuals or entity. Id. This is a much more tailored and effective means of achieving the legislative goals of SORNA II.

Similarly, Megan's Law II limited dissemination of the offender's information to those individuals who could possibly have contact with the offender and, thus, had a use for the information. Megan's Law directed law enforcement to disseminate information to those individuals who might come into contact with the offender, such as an offender's neighbors, the children and youth services director within the offender's county of residence, school officials within the offender's area school district, and licensed child care centers located in the offenders municipality. 42 Pa.C.S. § 9798(b) (effective Jan. 24, 2005 to Feb. 20, 2012).

For this reason, in light of the fact that SORNA II disseminates registration information about sex offenders to those individuals who do not need the information to protect themselves from the sex offender, we find that Section 9799.63 is excessive when compared to the alternative purpose of SORNA II to protect individuals from sex offenders who might recidivate. We conclude that the effect of this factor weighs towards finding Section 9799.63 punitive.

Balancing of Factors

In summary, the General Assembly in SORNA II reinstated many of the sex offender registration and reporting provisions that the courts previously found to be remedial and constitutional. The General Assembly, however, retained the Internet dissemination provisions that the Supreme Court in Muniz found to be punitive. Informed by the Supreme Court's analysis and cognizant of its binding force, we conclude that Section 9799.63 is punitive in effect. The Internet dissemination provision mandated by Section 9799.63 is reminisicent of traditional forms of punishment, will adversely impact Appellant's reputation, and the global and unrestricted dissemination of his personal information is excessive when compared with the legislature's targeted purpose of ensuring the safety of any community or neighborhood in which a sex offender resides. For these reasons, we conclude the Section 9799.63 violates the federal Ex Post Facto Clause.

Severability

Appellant contends that the Internet provisions of SORNA II are severable from the rest of the statutory scheme. We agree.

"Severance is precluded only where, after the void provisions are excised, the remainder of the statute is incapable of execution in accordance with the legislative intent." Williams, 832 A.2d at 986. In response to Muniz, the General Assembly enacted SORNA II, largely reinstating the registration and reporting requirements required of pre-SORNA offenders to those prescribed by Megan's Law II, a remedial scheme that operated

successfully in furtherance of the General Assembly's intent and within constitutional limits. We perceive no obstacles to the continued execution of SORNA II, absent its Internet dissemination provisions. Thus, we conclude that the Internet provisions of SORNA II are severable.

Accordingly, we affirm Appellant's Judgment of Sentence but direct the removal of his entry from the Pennsylvania State Police Megan's Law Website.

Judgment of Sentence affirmed. 42 Pa.C.S. § 9799.63 unconstitutional and severable.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/23/2019