J-S63040-19

2020 PA Super 4

COMMONWEALTH OF PENNSYLVANIA,

       Appellee

       v.

TERRELL COLEMAN,

       Appellant

:   IN THE SUPERIOR COURT OF
:      PENNSYLVANIA
:
:
:
:
:
:
:
:
:
:
:   No. 99 EDA 2019

Appeal from the Judgment of Sentence Entered August 30, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009492-2017

BEFORE:   GANTMAN, P.J.E., MURRAY, J. and STRASSBURGER, J.[*]

OPINION BY STRASSBURGER, J.:       **FILED JANUARY 09, 2020**

Terrell Coleman (Appellant) appeals from the judgment of sentence of 14 to 28 months of incarceration to be followed by four years of probation, imposed after he was found guilty in a bench trial of burglary, criminal trespass, and contempt in connection with his violating a Protection From Abuse (PFA)[1] order. After careful review, we vacate Appellant's judgment of sentence and remand for proceedings consistent with this opinion.

The trial court summarized the factual and procedural history of this case as follows.

> On or about August 7, 2017, [M.H. (Complainant),] was granted a temporary PFA [order] against her live-in boyfriend, Appellant. Appellant was not on the lease at [the premises] in the city and county of Philadelphia ("the house"), nor did he ever

---

[1] 23 Pa.C.S. §§ 6101-6122.

[*] Retired Senior Judge assigned to the Superior Court.

possess a key to the house. Appellant evaded attempts at service, and gained entry into the house on several occasions without a key, causing Complainant to stay at her grandmother's house until Appellant could be served [with the temporary PFA order]. Appellant was served with the [temporary] PFA [order] and eviction notice on August 21, 2017[,] when Complainant came home and found Appellant hiding in her daughter's bedroom closet. Complainant was present when an officer offered Appellant an opportunity to get anything of his from inside the house. Appellant declined the opportunity, and said, "I don't have shit in that house. I don't want nothing to do with her."

On August 25, 2017, Complainant made a point of locking all of the doors and windows "because of everything that was going on." At around 9 or 9:30 [a.m.], Complainant was returning home and parking her car at the back of the house after dropping her daughter off at school when she noticed [Appellant] coming out of the house holding a bag. Complainant testified there was no exterior sign of forced entry, but further stated, [that] Appellant "tried to climb through [her] window a couple of months prior and kind of messed the fan up of [her second story] bedroom window [….] he's Spiderman or something, he found ways to get into this house." Complainant saw that the internet box, which was in Appellant's name, was missing from the house. Appellant did not have permission to be in the house on August 25, 2017 [(August 25 Incident). It was Appellant's position that he and Complainant discussed this over the phone, and she was permitting him to retrieve the internet box.]

\*\*\*

On or about August 30, 201[7], Complainant went to Appellant's new residence, at Appellant's invitation. When Complainant arrived, she realized that Appellant's new girlfriend … was living there as well. Complainant was not let in, but the police were called.

Trial Court Opinion, 4/17/2019, at 1-4 (citations to notes of testimony and footnotes omitted).

With respect to the August 25 Incident, Appellant was charged with burglary, criminal trespass, criminal mischief, and contempt for violating the PFA order. On June 12, 2018, after a bench trial, Appellant was found guilty of burglary, criminal trespass, and contempt.[2]

The trial court conducted a sentencing hearing on August 23, 2018. At that hearing, it was determined that Appellant had a prior record score of zero, and an offense gravity score of seven, which set the sentencing guidelines at 6 to 14 months of incarceration, plus or minus 6 months. N.T., 8/23/2018, at 4. The trial court pointed out that it had reviewed the presentence investigation report. *Id*. at 5. Counsel for Appellant told the trial court that Appellant is employed part-time and is "finished with the relationship with [Complainant]." *Id*. at 16. Appellant lives in another city with his new girlfriend, who testified at the sentencing hearing about the positive impact Appellant has had on her life.

The Commonwealth requested Appellant serve 6½ to 23 months of incarceration. The trial court offered the following.

> You know, the impact of the victim, this woman – I saw the text messages…. I wanted to make sure I looked at everything…. And the way really [*sic*] tortured her, and what she had to go through, through this…. You're a young man. You have your whole life ahead of you. And something that I'm so happy about is that you work…. So I'm going to give you a sentence that's going to give you a chance to be out sooner

---

[2] Appellant was charged separately for another incident, which occurred in July of 2018. Those charges were tried together with the charges for the August 25 Incident. He was found not guilty with respect to those charges.

rather than later. It's, ultimately, going to be up to you, and you're not going to be supervised for life.

But this has to be a wake up call, because this is too serious. There are too many people that think that domestic violence is OK.

N.T., 8/23/2018, at 24-25.

The trial court sentenced Appellant to concurrent terms of 12 to 24 months of incarceration on the burglary and criminal trespass convictions, to be followed by two years of probation.[3] Appellant timely filed a post-sentence motion pursuant to Pa.R.Crim.P. 720, challenging the trial court's decision to sentence Appellant to more than the 6½-to-23-month sentence recommended by the Commonwealth. Of note, in that motion, Appellant referred to the fact that the trial court stated that Appellant "tortured" Complainant via text message. Post-Sentence Motion, 8/27/2018, at ¶ 4; N.T., 8/23/2018, at 24.

A hearing was held on August 30, 2018. At that hearing, Appellant rested on the motion and requested the trial court to impose a county sentence. N.T., 8/30/2018, at 3. The trial court then offered the following. "I have reviewed your motion for reconsideration and [there is] something I want to point out…. I said torture. And that didn't factor into the sentence I gave. It's still a guideline sentence." *Id*. at 4. Then, the trial court pointed out that between the time of the conviction in this case and the time of his

---

[3] Appellant was sentenced to no further penalty on the contempt conviction.

original sentencing, Appellant pleaded guilty to violating the PFA order again. *Id*. The trial judge stated that after the original sentencing, he "went home and thought to [himself], [he] may have done the wrong thing and gave too many breaks and that [he] didn't take enough seriousness [*sic*] of the domestic violence." *Id*. at 5. The trial court then asked Appellant if he would like to say anything, and Appellant said, "I didn't mean to violate the PFA, Your Honor…." *Id*. The trial court then re-sentenced Appellant to 14 to 28 months of incarceration for burglary to be followed by four years of probation.[4]

Appellant timely filed a post-sentence motion challenging the trial court's decision to increase Appellant's sentence at the hearing on the post-sentence motion. That motion was denied by operation of law, and Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant argues that the trial court abused its discretion "by imposing a harsher sentence on Appellant at the hearing on his motion [for] reconsideration" where the trial court "had no new information at its disposal to support" the increase, and "additional prison time is simply unreasonable and vindictive, unjustified by anything other than [that which] was already known to the sentencing court." Appellant's Brief at 15.

_____

[4] As it relates to the sentence imposed on August 23, 2018, this sentence added two months to Appellant's minimum sentence, four months to his maximum sentence, and an additional two years of probation.

Appellant, the Commonwealth, and the trial court all suggest that Appellant is challenging the discretionary aspects of his sentence. We examine that issue first.

> Generally, issues not raised before the trial court are waived for appellate purposes. Similarly, this Court generally may not reverse, modify, or vacate an order or judgment of sentence for a reason not raised by the parties. Notwithstanding these general rules, [a] challenge to the legality of a particular sentence may be reviewed by any court on direct appeal; it need not be preserved in the lower courts to be reviewable and may even be raised by an appellate court *sua sponte*.

***Commonwealth v. Butler***, 173 A.3d 1212, 1214 (Pa. Super. 2017), *appeal granted*, 190 A.3d 581 (Pa. 2018) (internal citations and quotation marks omitted).

Instantly, the trial court, at a hearing on Appellant's motion to modify his sentence, increased Appellant's sentence. Three facts are not in dispute: 1) the Commonwealth did not request a modification of Appellant's sentence, either in writing pursuant to Pa.R.Crim.P. 721 or orally at the hearing;[5] 2) the trial court was not correcting a patent or obvious mistake in Appellant's original sentence;[6] and 3) the original sentence imposed upon

---

[5] There is no question that the Commonwealth may file a motion to modify sentence, and the trial court is permitted to increase a defendant's sentence in response thereto. **See** Pa.R.Crim.P. 721; ***Commonwealth v. Anderson***, 450 A.2d 1011 (Pa. Super. 1982) (*en banc*).

[6] A trial court may *sua sponte* correct a patent or obvious mistake. **See** Pa.R.Crim.P. 720 (Miscellaneous Comments); 42 Pa.C.S. § 5505 (providing a court may modify or rescind an order within 30 days). In ***Commonwealth v. Holmes***, 933 A.2d 57, 67 (Pa. 2007), our Supreme Court pointed out that

*(Footnote Continued Next Page)*

Appellant was not illegal.[7] Thus, the issue here is whether a court may *sua sponte* increase a defendant's sentence where it has decided the original sentence imposed was too lenient. We conclude that such a challenge implicates the authority of the court to impose the sentence, and therefore this issue is a challenge to the legality of Appellant's sentence, which we may address *sua sponte*. **See Commonwealth v. Robinson**, 7 A.3d 868, 870 (Pa. Super. 2010) ("This Court has held that an attack upon the power of a court to impose a given sentence is a challenge to the legality of a sentence.").

Our review of this appeal is guided by this Court's decision in **Commonwealth v. Nickens**, 923 A.2d 469 (Pa. Super. 2007). In **Nickens**, on January 19, 2006, Nickens's probation was revoked and the court sentenced him to an aggregate 20 to 72 months of incarceration. This sentence consisted of two concurrent terms of 14 to 60 months of incarceration, and a consecutive term of 6 to 12 months of incarceration. Nickens timely filed a motion to modify sentence, requesting the trial court

_(Footnote Continued)_ ———————————

"the inherent power to correct errors does not extend to reconsideration of a court's exercise of sentencing discretion. A court may not vacate a sentencing order merely because it later considers a sentence too harsh or too lenient."

[7] A trial court may correct an illegal sentence *sua sponte*, even where a defendant has started serving that sentence. **See Commonwealth v. Jones**, 554 A.2d 50 (Pa. 1989); **Commonwealth v. Vanderlin**, 580 A.2d 820, 829 (Pa. Super. 1990).

to run the consecutive term concurrently, and re-sentencing him to an aggregate of 14 to 60 months of incarceration. The Commonwealth did not file its own motion; instead, it filed "an answer to [Nickens's] motion which included a 'New Matter.'" *Id*. at 471. "In the New Matter, the Commonwealth requested that the court increase [Nickens's] sentence." *Id*.

The trial court denied Nickens's motion to modify sentence, and "simultaneously modified [Nickens's] sentence upward," adding four months to Appellant's minimum sentence "for the reasons enumerated in the Commonwealth's answer." *Id*. Nickens filed a notice of appeal to this Court, challenging the "the sentencing court's order that modified his sentence upward despite the Commonwealth's failure to file a post-sentence motion."[8] *Id*. This Court offered the following.

> [W]hen the Commonwealth does not file a post-sentence motion seeking modification of a sentence, the sentencing court may not increase a sentence based upon the defendant's post-sentence motion. In **Commonwealth v. Broadie**, [] 489 A.2d 218 ([Pa. Super.] 1985), this Court stated that "[i]n the case of a Rule 1410[3] motion by the defendant, the court [cannot] increase the sentence since it cannot raise issues *sua sponte*." **Id**. at 222 n.5, *citing* **Commonwealth v. Murphy**, [] 451 A.2d 514 ([Pa. Super.] 1982); **see also Commonwealth v. Greer**, [] 554 A.2d 980, 987 n. 6 ([Pa. Super.] 1989).[]
>
> > [3] Former Pa.R.Crim.P. 1410 was renumbered as Rule 720, effective April 1, 2001. Similarly, former Rule 1411 was renumbered as Rule 721.

---

[8] **Nickens** does not consider whether the issue involves the legality or discretionary aspects of a sentence, but does state that the trial court "increased [Nickens's] sentence *sua sponte* without the legal authority to do so." **Nickens**, 923 A.2d at 472.

***Nickens***, 923 A.2d at 472.

This Court went on to point out that there is no authority for this Court to consider "the Commonwealth's Answer and New Matter as an equivalent to a post-sentence motion." ***Id***. Therefore, we concluded "that because the Commonwealth did not file a timely post-sentence motion, the sentencing court had no basis on which to impose a harsher sentence. By doing so, the trial court essentially increased [Nickens's] sentence *sua sponte*, without the legal authority to do so." ***Id***. Thus, this Court vacated Nickens's judgment of sentence and remanded for the trial court "to reinstate the sentence imposed on January 19, 2006." ***Id***. at 473.

Instantly, Appellant's situation is virtually indistinguishable from that which we considered in ***Nickens***. Appellant filed a post-sentence motion requesting the trial court to reduce his sentence. Then, despite the fact the Commonwealth did not file a post-sentence motion,[9] the trial court *sua sponte* reconsidered its sentence and increased Appellant's sentence. Pursuant to Pa.R.Crim.P. 720, Pa.R.Crim.P. 721, and ***Nickens***, the trial court was without authority to do so. Accordingly, as we did in ***Nickens***, we vacate the sentencing order of August 30, 2018, and remand for the trial court to reinstate the sentencing order of August 23, 2018.

---

[9] In fact, the Commonwealth did not even request an increase in Appellant's sentence.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/9/20