J-S65003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL PAUL HOTZ | : | |
| | : | |
| Appellant | : | No. 665 MDA 2019 |

Appeal from the Judgment of Sentence Entered March 25, 2019
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0005995-2017

BEFORE: PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED SEPTEMBER 30, 2020**

Daniel Paul Hotz appeals from the judgment of sentence entered in the York County Court of Common Pleas. He contends that Subchapter I of the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa. C.S.A. §§ 9799.51–9799.75, violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions. In light of our Supreme Court's decision in ***Commonwealth v. Lacombe***, 35 MAP 2018, 2020 WL 4150283 (Pa., filed July 21, 2020), we conclude that the registration provisions of subchapter I do not violate federal and state prohibitions against *ex post facto* laws. Accordingly, we affirm the judgment of sentence.

On July 5, 2017, sixteen-year-old S.A. revealed that Hotz, then the boyfriend of a friend's mother, sexually assaulted her when she was nine years

---

[*] Retired Senior Judge assigned to the Superior Court.

old. S.A. was at the friend's house and fell asleep; when she awoke, she was alone with Hotz, who took her to a bedroom. He held her arms down and made her watch a pornographic video; he then started rubbing her chest and thighs. He took her pants off and put his penis in her vagina. He stopped when she started to bleed. S.A. did not know Hotz's name, but she later identified his photo from a police photo array as the man who sexually assaulted her.

Subsequently, Hotz gave a statement to the police. After initially denying any sexual contact with S.A., Hotz claimed S.A. initiated all sexual contact. Hotz agreed to take a voice analysis and stress test, which showed deception on his part about showing S.A. a pornographic video and if he touched her with his penis. However, Hotz continued to maintain he did not have sexual intercourse with S.A.

The Commonwealth charged Hotz with rape of a child, indecent assault, corruption of minors, and aggravated indecent assault.[1] On November 19, 2018, Hotz entered a negotiated guilty plea to one count of indecent assault of a person less than thirteen years old. At sentencing, Hotz sought to withdraw his guilty plea. After continuing the matter for defense counsel to file a formal written motion, the trial court denied the motion. On March 25, 2019, the trial court then sentenced Hotz in accordance with the terms of the

---

[1] 18 Pa.C.S.A. §§ 3121(c), 3126(a)(7), 6301(a)(1), and 3125(a)(7), respectively.

plea agreement to 9 to 23 months' imprisonment, followed by three years' probation. The Sexual Offender Assessment Board, following an evaluation, found Hotz did not meet the criteria for a sexually violent predator. As a result, the Commonwealth did not seek a SVP designation. However, the trial court required Hotz to comply with applicable sexual offender registration requirements.

Hotz filed a timely notice of appeal. After receiving an extension of time, Hotz filed a timely concise statement of errors complained of on appeal. The trial court then filed an opinion.

In his only issue on appeal, Hotz argues that his registration requirements under Subchapter I are punitive and therefore violate the *ex post facto* prohibitions in the United States and Pennsylvania Constitutions. **See** Appellant's Brief, at 7-8.[2] As such, he concludes the registration requirements constitute an illegal sentence. **See id**., at 8. We disagree.

A challenge to the legality of a sentence is a question of law. Therefore, our standard of review is *de novo*, and our scope of review is plenary. **See Commonwealth v. Butler**, 226 A.3d 972, 977 (Pa. 2020).

Before we address the merits of Hotz's claim, it is necessary to review the relevant sexual offender regulatory statutes and the cases interpreting those statutes in light of the *ex post facto* doctrine.

---

[2] In the Rule 1925(b) statement, Appellant also challenged the trial court's denial of his motion to withdraw his guilty plea. He has abandoned this claim on appeal.

In 2006, the United States Congress passed the Adam Walsh Child Protection and Safety Act ("Adam Walsh Act"), which established a national sex offender registry. *See* 34 U.S.C. §§ 16901-16945. As with prior federal legislation, Congress directed states to comply with the Adam Walsh Act in order to avoid the loss of federal grant funding. *See* 34 U.S.C. § 20927(a); *see also South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (stating "Congress may attach conditions on the receipt of federal funds. . . ."). In response to the federal mandate, the Pennsylvania General Assembly passed SORNA ("SORNA I"), which Governor Tom Corbett signed into law on December 20, 2011. *See* 42 Pa. C.S.A. §§ 9799.10-9799.41.

The enactment of SORNA I brought Pennsylvania into compliance with the Adam Walsh Act and provided a means for the public and law enforcement officials to obtain information on sex offenders. The Adam Walsh Act provided a mechanism for the Commonwealth to increase its regulation of sexual offenders in a manner which is non-punitive, but offers an increased measure of protection to citizens. *See* 42 Pa.C.S.A. § 9799.11(a)(2).

SORNA I expanded the list of offenses requiring registration, and grouped offenders into one of three "Tiers," based on the severity of the offense. *See* 42 Pa C.S.A. § 9799.14(a)-(d). The legislation increased the mandatory registration periods for adults to fifteen years, twenty-five years, and lifetime, depending upon the offense and Tier classification. *See* 42 Pa. C.S.A. § 9799.15(a). Offenders classified in Tier I were required to register in person annually with the Pennsylvania State Police, *see* 42 Pa.C.S.A. §

9799.15(e)(1), and provide the information listed in 42 Pa.C.S.A. § 9799.16(b). When it became effective, SORNA I applied to convicted sex offenders already required to register. **See** 42 Pa.C.S.A. § 9799.10(4). As such, prior sex offender registration requirements expired when SORNA became effective on December 20, 2012.

After SORNA I went into effect, some sex offenders challenged the retroactive application of the statute's registration provisions. On that basis, the offenders argued SORNA I violated the *ex post facto* clauses of the federal and state constitutions. In addressing these challenges, this Court rejected claims that the registration requirements of SORNA I constituted criminal punishment. **See Commonwealth v. Perez**, 97 A.3d 747, 759 (Pa. Super. 2014); **see also Commonwealth v. Britton**, 134 A.3d 83, 87-88 (Pa. Super. 2016). The Pennsylvania Supreme Court, however, reached a different conclusion.

In **Muniz**, our Supreme Court concluded the retroactive application of sexual offender registration requirements under SORNA I were punitive and constituted increased criminal punishment in violation of the *ex post facto* prohibition in the United States Constitutions. **See Commonwealth v. Muniz**, 164 A.3d 1189, 1223 (Pa. 2017).

In response to **Muniz**, the General Assembly passed legislation known collectively as SORNA II, which Governor Tom Wolf signed into law. **See** Act of Feb. 21 2018, P.L. 27, No. 10; Act of June 12, 2018, P.L. 1952, No. 29. The legislation made a series of changes to Pennsylvania's sex offender

registration system. The most important among these was the enactment of Subchapter I. Subchapter I specifically addressed the issues identified in **Muniz** by eliminating the punitive aspects of the prior sex offender registration law. **See** 42 Pa. C.S.A. § 9799.51(b)(4).

Subchapter I significantly reduces the registration requirements for offenders, like Hotz, who committed sex crimes on or after April 22, 1996, but before December 20, 2012. **See** 42 Pa. C.S.A. § 9799.52(1). The changes made to the registration requirements include eliminating the tiered offense system and reducing the in-person reporting requirements for all offenders. **See** 42 Pa. C.S.A. §§ 9799.54-9799.56. The legislation also divides offenders between ten-year and lifetime registration terms. **See** 42 Pa. C.S.A. § 9799.55. Further, it permits all offenders to petition for removal from the registry after twenty-five years. **See** 42 Pa. C.S.A. § 9799.59.

Here, Hotz concedes Subchapter I changed some of the provisions discussed in **Muniz**. But, despite a few minor changes, the registration requirements, according to Hotz, remain punitive.

Our Supreme Court recently addressed this issue in **Lacombe** using the two-part inquiry employed in **Muniz**. **See Lacombe**, 35 MAP 2018, 2020 WL 4150283 at *11. The Court first analyzed whether the General Assembly enacted Subchapter I to punish sex offenders and determined the General Assembly's purpose was to create a non-punitive civil regulatory scheme. **See id**. Next, the Court considered the **Mendoza-Martinez** factors to determine

whether registration requirements of Subchapter I were punitive.[3] In its review, the Court found that Subchapter I's internet registration provisions were akin to public shaming and therefore punitive in effect. **See id**., at \*15. Nonetheless, the Court concluded that the punitive factors did not outweigh the non-punitive ones. **See id**., at \*\*11-18. As such, the Court held Subchapter I does not constitute criminal punishment. **See id**., at 18.

In light of the Supreme Court's decision in **Lacombe**, we conclude Hotz's registration requirements under Subchapter I do not constitute criminal punishment. **See id**., at 18. Therefore, his claim that the application of Subchapter I violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions fails.

_____

[3] Where legislation has the stated purpose of being non-punitive, courts conduct a multi-factored analysis pursuant to **Kennedy v. Mendoza-Martinez**, 372 U.S. 144, 168-69 (1963), to determine if the law is punitive in effect, despite its stated purpose. The **Mendoza-Martinez** factors include whether:

> (1) the sanction involves an affirmative disability or restraint; (2) the sanction has historically been regarded as punishment; (3) the sanction comes into play only on a finding of scienter; (4) the operation of the sanction will promote the traditional aims of punishment-retribution and deterrence; (5) the behavior to which the sanction applies is already a crime; (6) an alternative purpose to which the sanction may rationally be connected is assignable for it; and (7) the sanction appears excessive in relation to the alternative purpose assigned.

**Commonwealth v. Williams**, 832 A.2d 962, 973 (Pa. 2003) (citation omitted).

However, our inquiry does not end there. We must address the punitive nature of Subchapter I's internet provision and determine whether the application of this provision constitutes an illegal sentence, despite Hotz's failure to specifically raise this issue.

While **Lacombe** was on appeal before our Supreme Court, a panel of this Court addressed a constitutional challenge to Subchapter I's internet provision. In **Commonwealth v. Moore**, 222 A.3d 16 (Pa. Super. 2019), this Court held that the internet provision violates the *ex post facto* clause of the federal constitution and is therefore unconstitutional. **See id**., at 27. However, the **Moore** Court determined that this provision was severable from the rest of the regulatory scheme. **See id**. Therefore, the Court did not perceive any obstacles to the continued operation of SORNA II. **See id**.

Hotz, like the appellant in **Moore**, is subject to Subchapter I's internet provision. However, in contrast to **Moore**, Hotz failed to specifically challenge the internet provision on appeal. Failing to raise an issue on appeal generally means an appellate court cannot review it. **See Commonwealth v. Coleman**, 226 A.3d 598, 602 (Pa. Super. 2020). The one exception to that rule is if the issue concerns the legality of a particular sentence. **See id**. Under those circumstances, the issue need not be preserved and may even be raised by an appellate court *sua sponte*. **See id**.

Because of **Moore**, it appears as though the application of the internet provision to sex offenders, like Hotz, may create an illegal sentence issue. Our

Supreme Court in **Commonwealth v. Foster**, 17 A.3d 332 (Pa. 2011), held that a sentence is illegal for purposes of issue preservation where the sentencing court lacked authority to avoid entering a particular sentence that is later found unconstitutional. **See id**., at 345. Accordingly, Hotz's sentence under **Foster** may be illegal for purposes of issue preservation and in turn would permit us to raise the issue *sua sponte*.

However, it remains unclear whether **Moore** survives **Lacombe** since the **Lacombe** Court also found the internet provision punitive in nature, but did not explicitly rule it unconstitutional. We note that the Supreme Court of Pennsylvania held the petition for allowance of appeal in **Moore** pending the disposition of **Lacombe**. **See Commonwealth v. Moore**, 42 WAL 2020 (Pa., filed May 12, 2020). The Supreme Court has taken no further action regarding the petition for allowance of appeal in **Moore** since **Lacombe** was issued. Since it is not clear that Hotz's sentence is illegal at this time, we decline to address the issue *sua sponte*. Therefore, under all these circumstances, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/30/2020