J-S42008-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COREY TAYLOR | : | |
| | : | |
| Appellant | : | No. 2177 EDA 2017 |

Appeal from the Judgment of Sentence June 23, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008064-2014

BEFORE:   OTT, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED DECEMBER 09, 2019**

Corey Taylor appeals from the judgment of sentence imposed June 23, 2017, in the Philadelphia County Court of Common Pleas.  Taylor was sentenced to an aggregate term of 16 to 32 years' imprisonment following his jury conviction of one count each of rape of a child, unlawful conduct with a minor, and corruption of minors,[1] for the sexual assault of his ex-girlfriend's then 11-year-old daughter, B.A., in the summer of 2012.  On appeal, Taylor argues the trial court erred by: (1) denying a motion for a mistrial after improper testimony by two witnesses; (2) denying a motion for judgment of acquittal when the Commonwealth failed to prove the date of the incident with sufficient particularity; (2) denying a motion for a new trial after the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(c), 6318(a)(1), and 6301(a)(1)(i), respectively.

Commonwealth committed prosecutorial misconduct during closing arguments; (4) denying a motion for the release of juror information; (5) providing the jury with a misleading supplemental charge; and (6) denying a motion for a new trial based upon an allegation that a juror conducted independent, extra-judicial research. For the reasons below, we affirm.

The facts underlying Taylor's conviction are aptly summarized by the trial court as follows:

> During the summer of 2012, the eleven-year-old victim, B.A., attended a cookout at [Taylor's] father's home. At the time, [Taylor] was in a relationship with B.A.'s mother. After spending about an hour at the cookout, [Taylor] drove B.A., her brother and sister, and his three children to his home located in the city and county of Philadelphia. The children eventually fell asleep in the front bedroom.
>
> At some point, [Taylor] awakened B.A. and grabbed her by the wrist. He walked with her to the middle bedroom and laid her down on the floor. [Taylor] removed B.A.'s pants and underwear. While on his stomach, he licked B.A.'s vagina. [Taylor] then placed his penis inside of her vagina. When B.A. asked [Taylor] to stop, he replied, "Not yet." A couple of minutes later, when B.A. asked again, [Taylor] complied. [Taylor] then went to the bathroom and returned with a washcloth, which he used to wipe up B.A.'s vagina. He then gave money to B.A. and threatened to kill her if she told anyone. B.A. went back to the front bedroom and fell asleep.
>
> On March 26, 2014, when B.A. was fourteen years old, she disclosed the abuse to Tiffanie Brown, the assistant preschool teacher at the Younger Days Daycare Center ("Younger Days") in Philadelphia, where B.A. attended an afterschool program. On March 31, 201[4], Ms. Brown and the director of Younger Days met with B.A.'s mother to inform her of the allegations. The police were also notified at this time.

Trial Court Supplemental Opinion, 10/16/2019, at 1-2.

- 2 -

Taylor was charged with numerous offenses including rape of a child.[2]

His first jury trial, conducted in August of 2016, ended in a mistrial when the

jury was unable to reach a verdict. His second jury trial commenced on

December 6, 2016. On December 13, 2016, the jury returned a verdict of

guilty on charges of rape of a child, unlawful conduct with a minor, and

corruption of minors. On March 22, 2017, Taylor filed a post-verdict motion

seeking a judgment of acquittal or new trial, which the trial court denied at

the sentencing hearing. He also filed a motion for release of juror information,

based upon an allegation that one of the jurors had conducted independent

research. The court conducted argument on May 15, 2017, and denied the

motion.

On June 23, 2017, the trial court sentenced Taylor to two concurrent

terms of 16 to 32 years' imprisonment for unlawful contact with a minor and

rape of a child, as well as a concurrent term of two to four years' imprisonment

for corruption of minors. Taylor was determined not to be a sexually violent

predator under the Sexual Offender Registration and Notification Act ("SORNA

I"),[3] but is subject to a lifetime registration requirement as a result of his

---

[2] The majority of the charges were *nolle prossed* by the Commonwealth before Taylor's first trial.

[3] *See* 42 Pa.C.S. §§ 9799.10-9799.42. SORNA I was enacted on December 20, 2011, with an effective date of December 20, 2012. In February of 2018, it was replaced by SORNA II. *See* 2018 , Feb. 21, P.L. 27, No. 10, § 5.2, imd. effective ("Act 10"). On June 12, 2019, Subchapter I, 42 Pa.C.S. §§ 9799.51-9799.75, was enacted to apply to offenders who, like Taylor, committed a

conviction of rape of a child.  *See* 42 Pa.C.S. § 9799.55(b)(2)(i)(A).[4]  Taylor filed a timely notice of appeal on July 6, 2017.

On July 12, 2017, the trial court ordered Taylor to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). When no concise statement was filed, the court filed an opinion on August 9, 2017, finding all appellate issues waived.  *See* Trial Court Opinion, 8/9/2017, at 1-2.  Thereafter, on October 10, 2017, Taylor's counsel filed in this Court an application for remand requesting permission to file a concise statement *nunc pro tunc* in the trial court.  This Court granted the application on November 20, 2017, and directed counsel to file a concise statement within 21 days and the trial court to file a supplemental opinion 30 days thereafter. Counsel complied with our directive and filed a concise statement on December 11, 2017.  The trial court did not file a supplemental opinion.

On June 7, 2018, Taylor filed a *pro se* motion for substitute counsel. This Court forwarded the motion to appellate counsel, who filed an application for remand so that the trial court could conduct a *Grazier*[5] hearing.  By order entered August 20, 2018, we granted counsel's motion, and remanded the case to the trial court.  Following a November 21, 2018, *Grazier* hearing, the

---

sexual offense on or after April 22, 1996, but before December 20, 2012.  *See* 2018, June 12, P.L. 140, No. 29, § 4, imd. effective ("Act 29").

[4] Because Taylor committed the rape during the summer of 2012 – before the initial enactment of SORNA I - his registration requirements are set forth in Subchapter I of SORNA II.

[5] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

court appointed new appellate counsel. The record was returned to this Court, and the parties submitted their appellate briefs. However, because the trial court still had not filed a supplemental opinion, this Court entered an order *sua sponte* on August 28, 2019, remanding the record to the trial court, and directing the trial court to comply with our November 20, 2017, order within 21 days. Upon remand, Taylor's new counsel filed a *nunc pro tunc* statement of matters complained of on appeal. **See** *Nunc Pro Tunc* Statement of Matters Complained of on Appeal, 8/29/2019. The trial court subsequently filed a supplemental opinion on October 16, 2019.

In his first issue, Taylor argues the trial court erred when it denied his motion for a mistrial based upon improper testimony by two Commonwealth witnesses: (1) Dr. Philip Scribano, the Commonwealth's expert in child abuse pediatrics, and (2) S.A., the victim's mother. **See** Taylor's Brief at 25-36.

With regard to Dr. Scribano, Taylor contends the witness "impermissibly invaded upon the domain of the jury" when the doctor opined as to the credibility of the victim. **Id.** at 26. During the Commonwealth's redirect examination, the following exchange took place:

> [Prosecutor:] … Counsel was asking you questions about behavioral health and the answers that [B.A.] gave to you and she drew your attention to the fact that she answered no for each one of those questions. Does that surprise you?
>
> [Dr. Scribano:] No.
>
> [Prosecutor:] Why?

[Dr. Scribano:] When children – number one, everybody has good days and bad days and anyone with even trauma, **as I believe [B.A.] had**, will have –

[Defense Counsel:] I'll object and move to strike.

THE COURT: Sustained.

I'm going to direct you to disregard that statement by the doctor.

N.T., 12/8/2016, at 72 (emphasis supplied). Counsel did not request a mistrial at that time.

As for the victim's mother, Taylor argues he was denied a fair trial "when the prosecutor elicited inflammatory testimony," which had not been disclosed to the defense before trial. Taylor's Brief at 36. During her direct examination, the victim's mother was asked whether, looking back, the sexual abuse had an effect on the victim's life. She responded:

She's just really in a dark place. Like she walks around the house with a hoodie on and all you can see is her eyes. She draws the strings up where all you can see is her eyes. **Not too long ago, she tried to kill herself.**

N.T. 12/8/2016, at 112 (emphasis supplied). Defense counsel immediately objected, but before the court could respond, the victim's mother continued, "So my daughter is just in a bad place right now." *Id.* The prosecutor then asked, "Was she like that before when she was younger?" to which the witness replied, "No." *Id.* Defense counsel objected again, and the court sustained the objection. *See id.*

When the Commonwealth completed its direct examination, defense counsel asked for sidebar discussion, and requested a mistrial:

> Your Honor, given the testimony of [S.A.] that was apparently provided to – the information of which was apparently provided to the prosecution but was not provided to defense before [S.A.] testified with regard to [B.A.'s] attempted suicide, at this point, I would ask for a mistrial. And also given the testimony of the doctor that he believed that [B.A.] has suffered trauma, those two things in conjunction at this point, I feel compelled to make that motion.

*Id.* at 115. The prosecutor explained to the court that a few days before trial, S.A. came to her office for trial preparation and "mentioned in passing that her daughter had tried to take her life in between the last trial and this trial."

*Id.* at 116. The prosecutor stated that because she did not ask for details and took no written notes, she was not "aware this was something [she] needed to pass to defense." *Id.* The trial court denied the motion for mistrial. However, the court took a brief recess so that both attorneys could speak with S.A. before determining how to proceed.

Defense counsel then relayed the following to the trial court:

> So we just – counsel and I just spoke with [S.A.] in the anteroom and she indicated that sometime before the last trial, [B.A.] had an accident at school, which prompted – and she thought she bumped her head or something, which prompted them to bring her to the hospital, at which point they were answering or having her ask -- answer behavioral health questions on a screen. She indicated to the hospital that she had tried to take a bunch of pills. Mom was not able to provide any specifics. She said [B.A.] said she had taken her mom's pills. [S.A.] said she has a lot of pills for a lot of different things, didn't count any, doesn't know what pills [B.A.] is supposed to have taken, and at no point did she ever find [B.A.] under the influence of those pills. She specified that this would have happened before the last trial because that was in August, so she knows that it happened while she was in school and she believes it was sometime in June prior to the last trial.

*Id.* at 117-118. Counsel argued the prosecutor should have disclosed the suicide attempt, and she was "blindsided" by S.A.'s testimony. *Id.* at 119. Because the court denied her request for a mistrial, counsel asked the court to instruct the jury that S.A. did not disclose B.A.'s purported suicide during her prior testimony. After some further discussion, the court instructed the jury as follows:

> Ladies and gentlemen, there has been a stipulation between counsel that [S.A.] testified at a previous hearing held in August 2016 and she did not mention any suicide attempt having occurred with her daughter.

*Id.* at 122.

As noted above, Taylor asserts the trial court erred when it denied his request for a mistrial. We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Commonwealth v. Bedford*, 50 A.3d 707, 712 (Pa. Super. 2013) (*en banc*), *appeal denied*, 57 A.3d 65 (Pa. 2012). It is well-settled:

> A mistrial is necessary only when "the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." A mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice.

*Id.* at 712-713 (internal citations omitted). Furthermore, Pennsylvania Rule of Criminal Procedure 605(B), mandates that a motion for mistrial "shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605(B).

Here, Taylor failed to make a timely request for a mistrial following Dr. Scribano's alleged improper testimony. Indeed, defense counsel promptly objected and moved to strike the doctor's unsolicited comment that he believed B.A. suffered "trauma." N.T., 12/8/2016, at 72. The court sustained the objection, and directed the jury to disregard the doctor's statement. *See id.* Taylor did not move for a mistrial at that time, but rather waited until after another witness completed her testimony, and S.A. commented about the victim's purported suicide attempt. Accordingly, Taylor's request for a mistrial based upon Dr. Scribano's testimony is waived. *See* Pa.R.Crim.P. 605(B).[6] *See also Commonwealth v. Boring*, 684 A.2d 561, 568 (Pa. Super. 1996) ("When an event prejudicial to a defendant occurs at trial, he

---

[6] We note Taylor does not assert the court should have granted his request based upon "manifest necessity," nor do we find such an argument would prevail. Pa.R.Crim.P. 605(B).

Furthermore, to the extent Taylor relies upon *Commonwealth v. Maconeghy*, 171 A.3d 707 (Pa. 2017), we find the facts in that case distinguishable. First, defense counsel in *Maconeghy* did not immediately object to the improper testimony, and when he did the following day, the court overruled the objection. *See id.* at 708-709. Here, counsel timely objected, the court sustained the objection, and the court instructed the jury to disregard the doctor's statement. Second, the doctor's comment in *Maconeghy* was clearly improper, as he testified it was his "medical conclusion that [the] child was victimized" despite the fact there was no physical evidence of abuse. *Id.* at 708. Indeed, the doctor's medical opinion was based solely on his assessment of the victim's credibility. Here, however, Dr. Scribano's comment that he believed the victim had suffered "trauma" is not as blatantly prejudicial.

- 9 -

may either object, requesting curative instructions, or move for a mistrial.") (quotation omitted), *appeal denied*, 689 A.2d 230 (Pa. 1997).

However, Taylor did promptly move for a mistrial after S.A. testified that B.A. attempted to commit suicide. With regard to S.A.'s testimony, Taylor argues the Commonwealth violated Pennsylvania Rule of Criminal Procedure 573 because it failed to alert the defense of the victim's suicide attempt. ***See*** Taylor's Brief at 32. He insists S.A.'s revelation that B.A. attempted to kill herself should have been disclosed to the defense as soon as the prosecutor learned of the information to prevent "trial by ambush." ***Id.*** at 33. Moreover, Taylor contends the information was "of paramount importance" in adjudging the victim's credibility. ***Id.*** at 35. He maintains the court's jury instruction was insufficient to cure the unfair prejudice he suffered by the Commonwealth's failure to disclose the information, which "handicapped" his ability to prepare an adequate defense. ***Id.*** at 36.

In asserting the Commonwealth violated its discovery obligations, Taylor cites to both Subsections (B)(1)(a) and (B)(1)(f) of Rule 573. ***See id.*** at 32-33. The Rule provides, in pertinent part:

> **(B) Disclosure by the Commonwealth.**
>
> (1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

- 10 -

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth; [and]

* * *

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]

Pa.R.Crim.P. 573(B)(1)(a), (f). Here, the evidence at issue is a statement by S.A. that the victim attempted suicide sometime after the sexual assault. Clearly, this statement, which was not written or recorded by the Commonwealth, does not constitute "evidence favorable to the accused," pursuant to Subsection (B)(1)(a), nor is it "tangible" evidence as contemplated in Subsection (B)(1)(f). Pa.R.Crim.P. 573(B)(1)(a), (f). Therefore, the trial court properly determined the Commonwealth did not commit a Rule 573 discovery violation warranting a mistrial.

To the extent Taylor relies upon this Court's decision in *Commonwealth v. Hanford*, 937 A.2d 1094 (Pa. Super. 2007), *appeal denied*, 956 A.2d 432 (Pa. 2008), we find the facts of this case distinguishable. In *Hanford*, the defendant was convicted of raping his co-worker. Prior to trial, the Commonwealth obtained, by sealed order, a recording of a jailhouse phone call between the defendant and a woman who was later called as a defense witness. Although the defendant requested any transcripts or surveillance recordings in his discovery request, the Commonwealth did not provide a copy of the recording before trial. *See id.* at 1096. During the call, the witness told the defendant "that she believed he had beaten the

complainant, but was not sure that he had raped her." *Id.* at 1100. When the witness denied making that statement under cross-examination, the Commonwealth revealed, for the first time, its possession of the recording, as well as its intent to introduce the recording as impeachment evidence. The defendant "had no access to the tape until later that day[.]" *Id.* On appeal, the defendant challenged, *inter alia*, the trial court's ruling allowing the Commonwealth to introduce the previously, undisclosed recording into evidence. Because a panel of this Court concluded the lack of notice constituted reversible error, the panel vacated the judgment of sentence and remanded for a new trial. *See id.* at 1103.

First, we note the discovery at issue in *Hanford* – a jailhouse recording – constituted both tangible evidence and the recording of electronic surveillance as specifically described in Rule 573(B)(1)(f) and (g). *See* Pa.R.Crim.P. 573(B)(1)(f) (mandating the Commonwealth disclose "any … tangible evidence), and (g) (mandating the Commonwealth disclose "the transcripts and recording of any electronic surveillance"). While the panel went on to discuss the importance of witness credibility in rape cases, the evidence withheld by the Commonwealth in that case fit squarely within the confines of evidence that must be disclosed under Rule 573. Moreover, with regard to the materiality of the recording, the panel noted that if the defendant knew the Commonwealth possessed the recording, "he might not have called the witness to testify, or might have changed his line of questioning." *Hanford*, *supra*, 937 A.2d at 1102.

- 12 -

Here, the evidence not disclosed by the Commonwealth consisted of the victim's mother's uncorroborated statement that "[n]ot too long ago, [the victim] tried to kill herself." N.T., 12/8/2016, at 112. Although the prosecutor acknowledged the victim's mother mentioned the incident "in passing" a few days before trial, the prosecutor did not ask for details and there was no written statement, notes, or recording to turn over to Taylor. *Id.* at 116. Furthermore, after a discussion with the victim's mother during a court recess, defense counsel learned the incident purportedly occurred **before** Taylor's first trial, although it was never mentioned during that trial. *See id.* at 118-119. Therefore, the court instructed the jury that the victim's mother "testified at a previous hearing held in August 2016 and she did not mention any suicide attempt having occurred with her daughter." *Id.* at 122.

We find no error or abuse of discretion in the trial court's decision to deny Taylor's motion for a mistrial. Absent any written statement or corroborating medical evidence, the Commonwealth had no obligation to report to the defense the witness's passing reference to the incident just a few days before trial. *See* Pa.R.Crim.P. 573(B). Moreover, Taylor has failed to demonstrate the court's cautionary instruction was inadequate to cure any resulting prejudice. *See Bedford*, *supra*, 50 A.3d at 713 (appellate court may presume the jury followed the court's cautionary instruction). Therefore, no relief is warranted.

Next, Taylor argues the trial court erred when it denied his post-trial motion for extraordinary relief based upon the Commonwealth's failure to

"present credible evidence to specify the date on which the alleged offense occurred."[7]  Taylor's Brief at 37.  Relying on **Commonwealth v. Devlin**, 333 A.2d 888 (Pa. 1975), Taylor contends his constitutional rights were violated when the Commonwealth was unable to establish "the date of the alleged offense with sufficient particularity."  Taylor's Brief at 39.  Without a specific time period to defend, Taylor maintains he could not challenge the victim's credibility by showing her behavior after the alleged attack was inconsistent with having been assaulted, nor could he establish the victim was not at his home on the date in question.  **See id.** at 40.

It is well-settled that the Commonwealth has a duty to "fix the date when an alleged offense occurred with reasonable certainty[.]" **Commonwealth v. Einhorn**, 911 A.2d 960, 977-978 (Pa. Super. 2006) (quotation omitted), *appeal denied*, 920 A.2d 831 (Pa. 2007).

> However, "[d]u[e] process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a single specific date of an alleged crime.  Permissible leeway varies with the nature of the crime and the age and condition of the victim balanced against the rights of the accused.

**Id.** at 978 (citations omitted).

In **Devlin**, the defendant was convicted of sodomizing a 22-year-old man, who had the mental capability of a six or seven-year-old child.  **See**

---

[7] This issue was raised in Taylor's *nunc pro tunc* concise statement filed on August 29, 2019.  Although the record does not indicate Taylor requested permission to file a supplemental statement, we note the trial court did cite to this concise statement when it outlined the issues for appeal.  **See** Trial Court Opinion, 10/16/2019, at 3-5.  Moreover, the court addressed this issue in its opinion.  **See id.** at 9-11.  Accordingly, we find it preserved for our review.

*Devlin*, *supra*, 333 A.2d at 889. The Commonwealth's evidence established the incident occurred sometime during a 14-month period while the defendant was managing the victim's finances. Furthermore, the defendant presented evidence that the victim's friends encouraged him to falsely accuse the defendant so that he could receive more of his own money. *See id.* at 889-890. On appeal, the Supreme Court reversed the defendant's conviction, holding: "To defend a charge of conduct occurring anywhere within a fourteen-month period was, for this [defendant], a fundamentally unfair burden." *Id.* at 891. Conversely, in *Commonwealth v. Groff*, 548 A.2d 1237, 1242 (Pa. Super. 1988), a panel of this Court found the Commonwealth provided "constitutionally adequate" proof as to the date of a sexual assault when the testimony established the defendant molested the six-year-old victim sometime during the summer of 1985, although no exact date was established.

In the present case, the trial court found the evidence presented by the Commonwealth established the date of the offense with sufficient specificity to allow Taylor to mount a defense. The court opined:

> In the present case, B.A. testified that she was eleven years old when she was sexually abused by [Taylor]. Though she was unable to identify the time of year or the season, B.A. recalled that her mother was pregnant at the time. She also agreed that her mother gave birth to twins on July 19, 2012. However, B.A. testified that the incident must have occurred closer to September because [Taylor] claimed the money he gave to B.A. was for school supplies. Conversely, [the victim's mother] testified that the incident took place in late June or early July, at which time she was eight or nine months pregnant. In light of B.A.'s age at

the time of the abuse, this time period is not unreasonably indefinite.

Trial Court Opinion, 10/16/2019, at 11 (record citations omitted).

Upon our review of the record, we agree with the decision of the trial court. Although B.A. was unable to remember the exact date of the assault, she did recall she was eleven years old at the time of the incident, and that it occurred after she attended a cookout with Taylor at Taylor's father's home. *See* N.T., 12/7/2016, at 62-63, 66. B.A. testified Taylor picked up her and her siblings at her mother's house, and drove them all to his father's home for the cookout; her mother, who was pregnant at the time with twins, stayed home. *See id.* at 66-67. B.A. acknowledged her mother gave birth to twins on July 19, 2012. *See id.* at 105. She stated that she thought he was going to take her back to her mother's house after the cookout, but Taylor drove all the children to his house, where the assault later occurred. *See id.* at 69-70. Under cross-examination, B.A. stated she thought the incident occurred closer to the start of school in September, because Taylor told her mother the money was for school supplies. *See id.* at 106.

Although she was not an eyewitness to the assault, B.A.'s mother provided corroborating testimony that the incident occurred during the summer of 2012. She recalled that Taylor took B.A. and two of her siblings to a cookout at his father's home in July of 2012. *See* N.T., 12/8/2016, at 102-103. She stated she believed he was going to bring the children home after the cookout, but instead, he took them to his house. *See id.* at 104. B.A.'s mother further testified that a few days after the cookout, she noticed

- 16 -

B.A. had a large sum of money. When she asked B.A. where she got the money, B.A. told her Taylor gave it to her. *See id.* at 104, 133-135. B.A.'s mother then called Taylor, who confirmed he gave B.A. the money "just for her to have." *Id.* at 105. We agree with the trial court that the Commonwealth established the date of the offense with sufficient particularity for Taylor to mount a defense. Accordingly no relief is warranted on this claim.

In his third issue, Taylor insists the Commonwealth's attorney committed prosecutorial misconduct during closing arguments. *See* Taylor's Brief at 40. Specifically, Taylor contends the prosecutor "repeatedly argued that the complaining witness's actions conformed to the actions of all children." *Id.* at 41. He asserts these comments were in violation of a pretrial order and impeded the jury's ability to weigh the evidence objectively. *See id.* at 43.

When reviewing a claim of prosecutorial misconduct, we must bear in mind the following:

> "A prosecutor has great discretion during closing argument; indeed, closing 'argument' is just that: argument." *Commonwealth v. Brown*, 911 A.2d 576, 580 (Pa.Super.2006). "[T]he prosecutor must limit his argument to the facts in evidence and legitimate inferences therefrom." *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253, 257 (1977) (citation omitted). However, the prosecutor "must have reasonable latitude in [fairly] presenting [a] case [to the jury,] and must be free [to present] his [or her closing] arguments with logical force and vigor." *Commonwealth v. Johnson*, 516 Pa. 527, 533 A.2d 994, 996 (1987) (citation omitted) (internal quotations omitted). Therefore, "[c]omments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in the jurors' minds a fixed bias and hostility toward the

defendant such that they could not weigh the evidence objectively and render a fair verdict." **Commonwealth v. Bryant**, 620 Pa. 218, 67 A.3d 716, 727 (2013) (internal markings and citations omitted).

**Commonwealth v. Eichinger**, 108 A.3d 821, 836 (Pa. 2014). Furthermore, "[a] prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments[; e]ven an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks." **Commonwealth v. Wholaver**, 177 A.3d 136, 175 (Pa. 2018) (quotation omitted).

In the present case, defense counsel argued several motions in *limine* based on events that occurred during Taylor's first trial in August of 2016. Relevant herein, counsel alerted the trial court to parts of the Commonwealth's opening and closing statements from the first trial that counsel found to be improper. The following exchange took place:

> [Defense Counsel]: Next would be counsel's line of argument. This is number six. And, Your Honor, I attached the notes of testimony from opening and closing as an exhibit.
>
> The first is referring to the defense theory as preposterous and arguing that counsel – that the defense theory was "Any child who is in trouble is going to all of a sudden out of nowhere start writing these disgusting details that they were raped. No child does that." I'm just asking that counsel limit their argument to the case.
>
> THE COURT: Right. You can't speculate what all children would do.

N.T., 12/7/2016, at 19-20.

Taylor contends the following comments during the Commonwealth's closing argument violated the court's pretrial ruling. First, in refuting Taylor's assertion that the victim lied about the assault, the prosecutor stated:

> [The victim] gets to talk about having his penis inside of her. She gets to talk about how scared she was. Do you think she gains any benefit from sitting up there and doing that? What child gets a benefit out of that?

N.T., 12/8/2016, at 204. Defense counsel objected, but the court did not enter a ruling. Later in the closing, the following exchange took place:

> [Prosecutor]: … What, so now we need proof that this barbecue even happened? Think about how ridiculous that argument is. Like, what kid is going to get up here and –
>
> [Defense Counsel]: Objection.
>
> [Prosecutor]: -- make up that she was in an argument – I'm sorry, at the barbecue? That makes absolutely no sense.
>
> THE COURT: Okay, I'm going to have you stop, [Prosecutor], here and just – I just want to emphasize that what another child would do, what another kid would do in this particular incident is not relevant to this case. It's what [B.A.] would – what [B.A.] did.
>
> All right, [Prosecutor]. Thank you.

*Id.* at 214-215. Taylor contends the prosecutor did not heed the court's ruling based on the following exchange near the end of her argument:

> [Prosecutor]: And, you know, when you look at this case basically and what the defense has been trying to show you, they're trying to grasp at straws because when you're faced with things like a child whose life has been forever changed --
>
> [Defense Counsel]: Objection.
>
> THE COURT: Again, it's only with respect to [B.A.].
>
> [Prosecutor]: Right. And when I say child, I mean [B.A.] because that's what what (sic) we heard. …

- 19 -

*Id.* at 221-222.

In its opinion, the trial court concluded these comments "did not rise to the level of prosecutorial misconduct such that the jury was unable to 'weigh the evidence objectively and render a fair verdict.'" Trial Court Opinion, 10/16/2019, at 13 (internal punctuation omitted). Furthermore, the court explained that it "interrupted the assistant district attorney and instructed the jury that the behavior of other children is not relevant[,]" and "[t]he jury is presumed to follow the trial court's instructions." *Id.* (citation omitted).

We find no basis to disagree. While the prosecutor's first two comments did imply that no child would fabricate an allegation of sexual assault, the court interrupted the prosecutor's closing and specifically instructed the jury that "what another kid would do in this particular incident is not relevant to this case." N.T., 12/8/2016, at 214. Moreover, as to the third comment, we find the prosecutor clarified that she was specifically referring to B.A. when she talked about "a child whose life has been forever changed." *Id.* at 221-222. Indeed, our review reveals no basis to conclude the "unavoidable effect" of these brief, isolated comments was to form "in the jurors' minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." *Eichinger*, *supra*, 108 A.3d at 836 (quotation omitted). Accordingly, Taylor's third issue fails.

Next, Taylor contends the trial court issued a misleading supplemental charge to the jury.[8] *See* Taylor's Brief at 44. By way of background, on the third day of deliberations, the jury sent the following question to the court: "How long are we continuing to deliberate when it's been consistently stated that there will not be a group consensus regardless of time?" N.T., 12/13/2016, at 3. In response, the court provided a *Spencer*[9] charge, stating, in relevant part:

> Ladies and gentlemen, getting a verdict in this case is a matter of extreme importance to the Court, the Commonwealth, and the defendant. And, of course, there will be very considerable time, expense, and anxiety for everyone concerned should I need to declare a mistrial and start this trial all over again from day one, which is what will happen if you do not return a verdict.

*Id.* at 4.

Taylor now claims the supplemental charge misled the jury by not informing them that "should they remain deadlocked, a new jury would be selected for the retrial." Taylor's Brief at 46. Rather, he insists the court's charge implied the same jury would sit for a retrial if a mistrial were granted. *See id.* at 46-47. Moreover, Taylor complains the court's reference to "time, expense, and anxiety" was not "germane to the jurors' deliberations." *Id.* at 47. Accordingly, he maintains a new trial is warranted.

---

[8] We will address Taylor's fourth issue, which challenges the court's denial of his request for juror information, with his sixth issue, which concerns the underlying basis for the request for that information.

[9] *Commonwealth v. Spencer*, 275 A.2d 299 (Pa. 1971)

The trial court found this issue waived because Taylor did not object to the supplemental charge at the time it was given. We agree. Pennsylvania Rule of Appellate Procedure 302 expressly requires a defendant to take "[s]pecific exception" to improper language in a jury charge in order to preserve the claim for appellate review. Pa.R.A.P. 302(b). The failure to object to a charge when it is given waives any challenge to that instruction on appeal. **See Commonwealth v. Hitcho**, 123 A.3d 731, 756 (Pa. 2015). **See also Commonwealth v. Garang**, 9 A.3d 237, 245 (Pa. Super. 2010) ("Trial counsel's failure to object to the jury instruction is fatal to Appellant's claim that the trial court erred in its charge to the jury."). Therefore, Taylor's challenge to the supplemental charge is waived.

Taylor's final two claims concern an alleged extraneous influence in the jury's deliberations. **See** Taylor's Brief at 43-44, 47-49. By way of background, on December 12, 2016, during the first full day of jury deliberations, the jurors sent the following question to the court:

> Number 2, [Taylor's] previous convictions were mentioned. Does he have prior arrest for sex crimes? Is he registered sex offender?

N.T., 12/12/2016, at 3. All parties agreed there was no mention of Taylor's prior convictions at trial, although the trial court recalled a witness mentioned Taylor "went away." **See id.** at 3-4. The court instructed the jury, "There was no mention of previous convictions." **Id.** at 5.

On March 22, 2017, Taylor filed a post-verdict motion requesting, *inter alia*, a new trial based upon the "likelihood that one or more of the jurors had

conducted independent research into [Taylor's] prior convictions (specifically, his prior conviction for indecent assault)[,]" based upon the jury's December 12th question. Motion for Judgment of Acquittal and a New Trial, 3/22/2017, at 9. A month later, Taylor filed a Motion for Release of Juror Information, seeking permission to "contact the jurors individually" to inquire about the origin of the question regarding Taylor's prior convictions, and determine "whether an evidentiary hearing on the matter is warranted." Motion for Release of Juror Information, 4/27/2017, at unnumbered 6. The trial court denied both motions.

On appeal, Taylor argues the trial court erred when it denied his motion for release of juror information. *See* Taylor's Brief at 43. He insists he has a "qualified right of access to jurors' names, but not their addresses" under the First Amendment of the Constitution. *Id.* Relying on ***Commonwealth v. Long***, 922 A.2d 892 (Pa. 2007), Taylor maintains that a trial court may deny access to juror information only if it makes specific findings on the record "which demonstrate that confidentiality of the names and address of the jurors is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 44 (internal punctuation and citation omitted). Moreover, Taylor contends the jury's question regarding his prior convictions established one or more jurors had conducted independent research, which compromised the jury deliberations and resulted in prejudice. *See id.* at 47-48. He points out there was no testimony regarding his prior convictions presented at trial. *See id.* at 48. Furthermore, Taylor claims that although S.A. mentioned he

- 23 -

"went away in November," that reference was "vague," and the question posed by the jury, which specifically mentioned sex offenses, was specific, evidencing that a jury "conducted independent online research into [] Taylor's background." *Id.* Because the "content of the extraneous influence was inflammatory," Taylor insists the trial court erred when it denied his motion for a new trial. *Id.* at 49.

The trial court found these related claims waived. *See* Trial Court Opinion, 10/16/2019, at 14. The court explained:

> The Pennsylvania Rules of Appellate Procedure state that issues that are not first raised in the trial court are waived on appeal. *See* Pa.R.A.P. 302(a). "Even where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver." *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa. Super. 2008). After this Court gave defense counsel's requested response to the jury, [*i.e.*, that there was no mention of Taylor's prior convictions,] defense counsel did not pursue the matter further. It was not until [Taylor] filed his motion for a judgment of acquittal and a new trial on March 22, 2017 that he raised the alleged juror misconduct, and not until April 27, 2017 that he filed a motion requesting the jurors' contact information. Accordingly, [Taylor's] claims are waived.

*Id.*

We agree, and find this Court's decision in *Strunk*, *supra*, instructive. In that case, after the jury retired to deliberate, the trial court asked if either counsel wanted anything reflected on the record. *See Strunk*, *supra*, 953 A.2d at 580. Defense counsel responded that he wanted "the record to indicate that tipstaff had to wake Juror Number 10 during the judge's final instructions." *Id.* The court acknowledged that the juror had closed his eyes,

but counsel did not request the court replace the juror with an alternate, or take any further action. *See id.* at 580-581. When the defendant raised a claim on appeal that he was denied his Sixth Amendment right to an impartial jury as a result of the juror's inattention, a panel of this Court found the claim waived. The panel opined:

> This Court has explained that claims involving alleged juror misconduct are waived where a defendant merely notes the alleged misconduct for the record but chooses to forgo further inquiry in favor of proceeding to verdict. We will not abandon this standard where the issue involves a sleeping juror. We now hold that where a juror is allegedly sleeping or otherwise engaging in conduct that a party finds inappropriate, counsel must do more than simply ask that the record reflect as much in order to preserve a claim for appellate review. In order to preserve the issue for appeal, counsel must take the additional step of specifically requesting the trial judge to take action to remedy the situation.

*Id.* at 581 (internal citation omitted).

Similarly, in **Commonwealth v. Milliner**, 276 A.2d 520 (Pa. 1971), the Pennsylvania Supreme Court held the trial court's denial of the defendant's post-trial request for a hearing to determine whether the "jury considered matters not in evidence in reaching its verdict" was waived. *Id.* at 522. The **Milliner** Court stated:

> [Defense] counsel was fully informed about the conversation between the jury foreman and the court crier before the verdict was recorded. He made no objection nor did he request that the jurors be questioned at that time. We have frequently stated that in the absence of fundamental error, a party may not sit idly by taking his chances on a verdict, only to appeal if the verdict is adverse.

*Id.*

- 25 -

In the present case, after the jury inquired about Taylor's prior convictions, both parties agreed no information regarding his prior convictions was presented at trial. *See* N.T., 12/12/2016, at 3. The trial court, however, noted there was testimony that Taylor "went away." *Id.* at 4. The court then asked Taylor's counsel how she would like to respond to the jury's question. *See id.* Counsel replied: "There was no mention of previous convictions at trial." *Id.* The court answered the jury's question as counsel suggested. *See id.* at 5. At no time before the jury reached its verdict did Taylor request further inquiry concerning the underlying basis for the jury's question. Rather, Taylor raised the issue for the first time in a post-verdict motion filed three months after the verdict, and petitioned to question the jurors a month later. Taylor had no more information concerning the purported extraneous influence at that time than he did when the question was first asked. Accordingly, we conclude Taylor's final two claims are waived.[10] *See Milliner*, *supra*; *Strunk*, *supra*.

---

[10] We find Taylor's reliance on *Long* is misplaced. Indeed, the appellant in that case was a newspaper whose reporters requested the names and addresses of jurors in a criminal trial during jury deliberations. *See Long*, *supra*, 922 A.2d at 895. After several hearings, the court denied their request. *See id.* On appeal, the Supreme Court concluded: (1) there is a "constitutional right of access" jurors' names, but not their addresses, and (2) the trial court erred in summarily denying the newspaper's request without "specific findings demonstrating that there is a substantial probability that an important right will be prejudiced by publicity and that reasonable alternatives to closure cannot adequately protect the right." *Id.* at 901, 906. Clearly, the request for juror information was made in a timely manner and not waived as in the case before us.

Because we have found all of the issues raised by Taylor on appeal are either meritless or waived, we affirm the judgment of sentence.[11]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/19

---

[11] As noted *supra*, Taylor is subject to lifetime registration as a sex offender as a result of his conviction of rape of a child. Because he committed this offense after April 22, 1996, but before December 20, 2012, his registration requirements are set forth in Subchapter I of SORNA II, enacted on June 12, 2018. Recently, in **Commonwealth v. Moore**, ___ A.3d ___, ___, 2019 PA Super 320, *9 (Pa. Super. 2019), a panel of this Court held that the internet dissemination provision set forth in Section 9799.63 of SORNA II violates the federal *ex post facto* clause and is, therefore, unconstitutional. Nevertheless, the panel also found that the "Internet provisions of SORNA II are severable from the rest of the statutory scheme." **Id.** Taylor should receive the benefit of the **Moore** decision upon his registration as a sex offender. Furthermore, we note that the constitutionality of Subchapter I is currently on appeal before the Pennsylvania Supreme Court. **See Commonwealth v Lacombe**, 35 MAP 2018 (argued Nov. 20, 2019).