J-S11006-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL ROY HOPPER | : | |
| | : | |
| Appellant | : | No. 8 WDA 2019 |

Appeal from the Judgment of Sentence Entered December 3, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0001935-2015

BEFORE:  NICHOLS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                          FILED JUNE 18, 2020

Appellant Michael Roy Hopper appeals from the judgment of sentence imposed following the revocation of his probation.  Appellant asserts that the trial court illegally required him to register for life under current Subchapter H[1] of the Sexual Offender Registration and Notification Act (SORNA) instead of Subchapter I.[2]  Appellant also challenges the discretionary aspects of his new sentence.  We affirm in part, vacate in part, and remand with instructions.

_____

[1] 42 Pa.C.S. §§ 9799.10-9799.41.

[2] 42 Pa.C.S. §§ 9799.51-9799.75.  Subchapter I is entitled "Continued Registration of Sex Offenders."  Appellant refers to Subchapter I as "the Continued Registration of Sex Offenders Act (CRSO)."  See Appellant's Brief at 13-16.  As discussed below, the trial court and the Commonwealth agree that Appellant is subject to the registration requirements of Subchapter I.

On July 1, 2014, the Allegheny County Police Department filed a criminal complaint charging Appellant with aggravated indecent assault, rape, and related offenses. See Criminal Compl., 7/1/14. According to the affidavit of probable cause attached to the criminal complaint, the then-fourteen-year-old victim stated that Appellant had sexually assaulted her multiple times between the ages of three and eleven. See Aff. of Probable Cause, 7/1/14, at 2-3. The Commonwealth subsequently filed an information on April 6, 2015 charging Appellant with the same offenses, but alleging that the offenses occurred between October 17, 2012 and October 16, 2013. See Criminal Information, 4/6/15, at 1, 3.

On August 25, 2015, Appellant entered a negotiated guilty plea to aggravated indecent assault of person less than sixteen years of age.[3] N.T. Plea Hr'g, 8/25/15, at 2-3. During the guilty plea hearing, it was established that the victim's date of birth was September 17, 1999. Id. at 3. Appellant waived the reading of the factual summary and stipulated to the affidavit of probable cause. Id. at 13-14. Pursuant to the plea agreement, the trial court sentenced Appellant to four years of probation and ordered Appellant

_____

[3] 18 Pa.C.S. § 3125(a)(8).

to register for life under the former version of Subchapter H. Id. at 2-3, 18-21.[4]

On August 20, 2018, the trial court conducted a violation of probation (VOP) hearing, found Appellant violated his probation, revoked Appellant's probation, and resentenced Appellant to term of five years' probation.[5] N.T. VOP Hr'g, 8/20/18, at 18-20. The conditions of probation included seeking placement at Remnant House and complying with all sexual offender and mental health treatment requirements. Id. The trial court indicated that it was imposing "zero tolerance" with respect to Appellant's compliance with mental health and sexual offender treatment and warned him that if he did not comply, he could be subject to a sentence of state incarceration. Id. at 18-19.

The Probation Office arrested Appellant pursuant to a probation violation warrant on October 9, 2018. Probation Violation Report, 11/5/18, at 2. On November 5, 2018, the Commonwealth filed a probation violation

_____

[4] The Commonwealth referred to SORNA as "Megan's Law" during the guilty plea hearing. N.T. Plea Hr'g, 8/25/15, at 2-3.

[5] At the August 20, 2018 VOP hearing, the Commonwealth alleged that Appellant had not made any progress in his sexual offender treatment and that he was unsuccessfully discharged from the treatment program. N.T. VOP Hr'g, 8/20/18, at 2-3. Additionally, Appellant failed a sexual offender polygraph after which he became aggressive, screamed at the probation officers, and was removed from the probation office. Id. Lastly, it was alleged that Appellant was not compliant with taking his psychiatric medication. Id.

report alleging that Appellant failed to report to his probation officer as ordered on October 4, 2018 and that Appellant was expelled from Remnant House on October 6, 2018. Id.; N.T. Gagnon I Hr'g, 11/5/18, at 1-2.

The trial court held a Gagnon I[6] hearing on November 5, 2018. At the hearing, Pastor David Sutton of Remnant House testified that when Appellant arrived at Remnant House he told Pastor Sutton that he did not want to follow the House's rules. N.T. Gagnon I Hr'g, 11/5/18, at 3. Pastor Sutton testified that Appellant alternated between defiant behavior and acquiescence over the next several days after his arrival. Id. at 3-5. Four days after arriving at Remnant House, Appellant told another resident that he was "sick of that f---ing n----r," referring to Pastor Sutton. Id. at 6. When Pastor Sutton confronted Appellant about the slur, Appellant did not deny saying it, instead he told Pastor Sutton that he "didn't mean it." Id. at 7. Appellant explained that he was upset at what he believed was unfair treatment. Id. As a result, Pastor Sutton expelled Appellant from Remnant House. Id. At the conclusion of the hearing, the trial court scheduled a

_____

[6] "A Gagnon I hearing is a pre-revocation hearing to determine if probable cause exists that a violation was committed. After this determination is made, a Gagnon II hearing is conducted where the Commonwealth is required to establish that the defendant did violate his parole/probation. The Gagnon decision has become the common moniker for both parole and probation revocation proceedings." Commonwealth v. Stafford, 29 A.3d 800, 802 n.1 (Pa. Super. 2011) (citation omitted); see also Gagnon v. Scarpelli, 411 U.S. 778 (1973).

Gagnon II hearing and deferred arguments about alternative placement for Appellant to that hearing. Id. at 7-10.

During the December 3, 2018 Gagnon II hearing, the trial court stated that because Appellant had not availed himself of treatment or supervision in the community, he was not an appropriate candidate for community supervision. N.T. VOP Hr'g, 12/3/18, at 2. Although Appellant apologized to Pastor Sutton for his previous remarks, the trial court stated that it did not believe that Appellant's apology was sincere. Id. at 3. The trial court acknowledged that there was a recommendation from Judicial Related Services (JRS) that Appellant be placed in Farkas House, which it considered a "step down" in community supervision and not a "step up." Id. The probation officer agreed with the trial court's assessment that Farkas House was a less restrictive environment. Id.

The probation officer recommended that the trial court revoke Appellant's probation and sentence him to a period of state incarceration so that he could "address his sex offender needs, [which] he [had] not been able to do because of behavior issues at treatment." Id. at 5. The probation officer further argued that Appellant did not have stable employment, as he had not held the same job for more than a year. Id. at 6. Appellant responded that he left his job of nine months for a similar one with higher pay. Id.

The trial court noted that it had a presentence investigation report (PSI) that was prepared for a prior VOP hearing, and Appellant's counsel stated that the PSI did not need to be updated. Id. at 7. Appellant's counsel argued that Appellant had only committed technical violations and that Appellant's mental state had improved since counsel first met Appellant. Id. at 7-8. The trial court admonished Appellant for his use of a racial slur, but stated that it viewed Appellant's comment as not a personal insult to Pastor Sutton, "but rather as a way to torpedo [his] placement at Remnant House." Id. at 8-9.

Ultimately, the trial court revoked Appellant's probation and sentenced him a term of two to five years' incarceration followed by two years' probation. Id. at 9-10; see also Sentencing Order, 12/3/18, at 1. The trial court also ordered Appellant to register as a sex offender. Specifically, the sentencing order stated that Appellant was subject to "Megan's Law Registration – TIER 3 – Lifetime Registration: SORNA registration required for lifetime." Sentencing Order, 12/3/18, at 1.

On December 11, 2018, Appellant filed a motion to modify his sentence. Appellant argued, among other things, that he had performed well in sex offender treatment for over two years, that his expulsion from Remnant House for using a racial slur was not a basis to sentence Appellant to two to five years' incarceration, and the trial court should not have imposed a sentence of incarceration when the JRS treatment plan

recommended placement at Farkas House. Mot. to Modify Sent., 12/11/18, at ¶ 1-20. Appellant sought a new VOP hearing and release from custody to Farkas House. Id. at ¶ 21. The trial court denied Appellant's motion on December 12, 2018.

Appellant filed a timely notice of appeal on December 28, 2018. On January 7, 2019, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement. The trial court granted two extensions for Appellant to file his Rule 1925(b) statement. Appellant timely filed a Rule 1925(b) statement on March 11, 2019, which challenged both the requirement that he register as a Tier 3 offender under SORNA and the discretionary aspects of the trial court's sentence following the revocation of Appellant's probation. Appellant's Rule 1925(b) Statement, 3/11/19, at ¶ 5.

Appellant raises the following issues for our review:

1. Did the trial court impose an illegal sentence when it subjected [Appellant] to SORNA, and Tier 3 "Megan's Law registration," instead of 42 Pa.C.S.[ §§] 9799.51-9799.75, as the conduct at issue at count 3 was all[e]ged to have occurred before December 20, 2012?

2. Did the trial court abuse its discretion when it imposed a manifestly excessive and unreasonable sentence of total confinement in violation of 42 Pa.C.S.[] § 9771(c), and when it failed to properly consider all of the relev[a]nt sentencing criteria under 42 Pa.C.S.[] § 9721(b)?

Appellant's Brief at 5 (some capitalization omitted).

Appellant's first claim is that "[t]he trial court imposed an illegal sentence when it required lifetime registration under" current Subchapter H

instead of Subchapter I. Appellant's Brief at 14. According to Appellant, based on the affidavit of probable cause, which he stipulated to during his guilty plea colloquy, the offense to which he pled guilty occurred between September 17, 2002 and September 16, 2011. Id. at 14-15. As the offense occurred between April 22, 1996 and December 20, 2012, the operative dates of Subchapter I, Appellant argues he is subject to registration under Subchapter I, not current Subchapter H. Id. at 15. Appellant contends that his sentence is illegal insofar as the trial court ordered him to register as a Tier 3 offender under Subchapter H, and requests that the registration requirement be vacated and this matter remanded to the trial court for resentencing under Subchapter I. Id. at 15-16.

The Commonwealth agrees that a remand is required for correction by the trial court. Commonwealth's Brief at 14-15. The Commonwealth notes that while the information stated that the offenses occurred between October 17, 2012 and October 16, 2013, the crime to which Appellant pled guilty occurred prior to December 20, 2012, based on the victim's date of birth and Appellant's stipulation to the affidavit of probable cause. Based on these facts, the Commonwealth concludes that Appellant is subject to sex offender registration under Subchapter I. Id. at 14 (citing 42 Pa.C.S. §§ 9799.52, 9799.55(b)(2)). The Commonwealth asserts that the trial court's sentencing order referencing a registration requirement under Subchapter H is a scrivener's error that should be corrected by the trial court. Id. at 15.

In its Rule 1925(a) opinion, the trial court acknowledges that

based on Appellant's conviction of aggravated indecent assault, committed after 1996 and prior to 2012, [A]ppellant is subject to lifetime registration pursuant to [42 Pa.C.S.] § 9799.55. It appears from the record that a scrivener's error occurred regarding the resentencing order, wherein lifetime registration is listed through SORNA instead of § 9799.55. This error is a distinction without a difference, as this court correctly sentenced him to lifetime registration.

Trial Ct. Op., 5/17/19, at 3 (some capitalization omitted). The trial court concluded that we should affirm its judgment of sentence in its entirety. Id. at 7. Unlike the Commonwealth, the trial court did not request a remand to correct the error. See id.

This Court has treated a claim that the trial court erred in requiring a defendant to register under current Subchapter H rather than Subchapter I as a challenge to the legality of the sentence. See Commonwealth v. Alston, 212 A.3d 526, 528 (Pa. Super. 2019) (citing, inter alia, Commonwealth v. Butler, 173 A.3d 1212 (Pa. Super. 2017)).[7] Because a

_____

[7] The theory that a party may challenge a registration requirement as a matter of the legality sentence was set forth by this Court in Commonwealth v. Butler, 173 A.3d 1212 (Pa. Super. 2017). In that case, we noted that in light of Muniz's holding that the registration and verification provisions of former Subchapter H were punitive, registration was part of the judgment of sentence, and therefore that a challenge to a sexually violent predator could be raised as an illegal sentencing claim because it relied on facts not found beyond a reasonable doubt at trial. See id at 1217–18. The Pennsylvania Supreme Court, however, overruled this Court's decision in Butler to the extent that Butler found that the registration, notification, and counseling provisions of former Subchapter H were punitive as applied to a sexually violent predator. Butler, 226 A.3d 972, 993 (Pa. 2020). We acknowledge that the questions of whether current Subchapter H and Subchapter I are punitive and therefore would raise a challenge to the legality of a sentence may be in doubt. However, given the

(Footnote Continued Next Page)

legality of sentence claim raises questions of law, our standard of review is de novo and our scope of review is plenary. See id. at 528.

By way of background, in 2011, the Pennsylvania General Assembly passed former Subchapter H, also referred to as "SORNA I," to govern the registration of individuals convicted of certain sexual offenses with the Pennsylvania State Police. See Act of Dec. 20, 2011, P.L. 446, No. 111 § 12 (effective Dec. 20, 2012); see also Commonwealth v. Lippincott, 208 A.3d 143, 146 (Pa. Super. 2019) (en banc). Although enacted on December 20, 2011, SORNA I took effect on December 20, 2012.

In Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017) (plurality), our Supreme Court declared SORNA I unconstitutional because its registration provisions were punitive and therefore violated the ex post facto clauses of both the United States and Pennsylvania Constitutions. Commonwealth v. Butler, 226 A.3d 972, 980–81 (Pa. 2020). In Lippincott, this Court concluded that the effective date of a statute was determinative for considering whether SORNA I applied to a defendant. Lippincott, 208 A.3d at 149.

In response to Muniz, the General Assembly enacted legislation to amend SORNA I. See Act of Feb. 21 2018, P.L. 27, No. 10 (Act 10) and Act

(Footnote Continued) ———————————————

limited arguments raised in this appeal, we decline to revisit our cases holding that a challenge to the proper statutory basis for a defendant's registration requirements goes to the legality of the sentence.

of June 12, 2018, P.L. 1952, No. 29 (Act 29) (collectively, SORNA II). Act 10 amended several provisions of Subchapter H and added Subchapter I.[8] Both current Subchapter H and Subchapter I define aggravated indecent assault as an offense triggering a lifetime of registration. See 42 Pa.C.S. §§ 9799.14(d)(7), 9799.55(b)(2)(i)(A). However, the current version of Subchapter H states that it applies to defendants who commit sexually violent offenses on or after December 20, 2012. See 42 Pa.C.S. § 9799.12 (defining sexually violent offense for the purpose of Subchapter H).

Subchapter I is entitled "Continued Registration of Sexual Offenders." Subchapter I, in relevant part, states that it applies to defendants who commit a "sexually violent offense" on or after April 22, 1996, but before December 20, 2012. See 42 Pa.C.S. §§ 9799.53 (defining sexually violent offense for the purpose of Subchapter I), 9799.55(b)(2)(i)(A). Subchapter I does not use the tier system used in Subchapter H to determine the length

_____

[8] Our Supreme Court is currently considering the constitutionality of Subchapter I. See Commonwealth v. Lacombe, 35 MAP 2018 (Pa. 2018). In Commonwealth v. Moore, 222 A.3d 16 (Pa. Super. 2019), this Court held that the dissemination of information regarding sexual offenders on a Pennsylvania State Police website under Subchapter I violates the federal Ex Post Facto Clause in light of Muniz. Moore, 222 A.3d at 27. However, we held that Section 9799.63 was severable from SORNA II and that the remainder of the SORNA II registration and reporting requirements for pre-SORNA offenders remained in effect. Id. More recently, the Commonwealth Court has held that Subchapter I is unconstitutional insofar as it is applied to a defendant whose offenses were committed in 1990 and did not carry a registration requirement at the time of the offense. T.S. v. Pennsylvania State Police, ___ A.3d __, 129 M.D. 2019, 2020 WL 2312567 (Pa. Cmwlth. filed May 11, 2020) (en banc).

of time for which an offender must register. Compare 42 Pa.C.S. § 9799.14 with 42 Pa.C.S. § 9799.55. Furthermore, "Subchapter I imposes less stringent reporting requirements than [current] Subchapter H." Alston, 212 A.3d at 529 (citations omitted); compare 42 Pa.C.S. § 9799.15(e) (requiring Subchapter H, Tier III offenders to appear in person quarterly to verify information included in the sexual offender registry) with 42 Pa.C.S. § 9799.60(b) (requiring annual in person verification of residence).

In Alston, this Court concluded that the trial court erred in requiring a defendant to register under Subchapter H and remanded the case for "the trial court to instruct Appellant on his proper registration and reporting requirements." Alston, 212 A.3d at 530. Specifically, the Alston Court vacated the portion of a defendant's sentence relating to reporting requirements, holding that when a defendant's "offenses straddle the effective dates of Subchapters H and I of SORNA, he is entitled to the lower reporting requirements of Subchapter I, absent a specific finding of when the offenses related to the convictions actually occurred." Id.

Here, Appellant pled guilty to one count of aggravated indecent assault, which is subject to lifetime registration under Subchapters H and I of SORNA II. See 42 Pa.C.S. §§ 9799.14(d)(7), 9799.55(b)(2)(i)(A). Based on the stipulations of the parties at the guilty plea hearing, the offense occurred before September 16, 2011. Because the date of the offense fell within the operative dates of Subchapter I and not Subchapter H, Appellant

is subject to the registration requirements of Subchapter I. See 42 Pa.C.S. §§ 9799.53.

Moreover, we do not agree with the trial court's reasoning that Appellant's sentence should be affirmed in its entirety despite the clerical error referencing "Megan's Law" and the tier system under Subchapter H, instead of Subchapter I. Although both Subchapter H and Subchapter I require lifetime registration for Appellant, the erroneous reference "is not a distinction without a difference," because Subchapter I contains less restrictive registration and verification requirement than Subchapter H. See Alston, 212 A.3d at 529.

Accordingly, we vacate the portion of the judgment of sentence indicating that Appellant was to comply with the reporting requirements under "Megan's Law" as a "Tier 3 offender" and remand for the trial court to correct its order and notify Appellant of his registration requirements under Subchapter I. See id.; see also 42 Pa.C.S. § 9799.57.

Appellant next challenges the discretionary aspects of his sentence following the revocation of his probation. Appellant contends that the trial court erred in imposing a sentence of total confinement and that the sentence was excessive. Appellant's Brief at 22-33. We address both claims in further detail below.

Initially, we note that "challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right."

Commonwealth v. Derry, 150 A.3d 987, 991 (Pa. Super. 2016) (citation

omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

Commonwealth v. Corley, 31 A.3d 293, 296 (Pa. Super. 2011) (citations

omitted). "Issues not presented to the sentencing court are waived and

cannot be raised for the first time on appeal." Commonwealth v.

Malovich, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citation omitted).

If an appellant presents a reviewable challenge to the discretionary

aspect of a sentence, the following standards govern our review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgments for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Commonwealth v. Raven, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation

omitted).

Appellant initially argues that the trial court abused its discretion when

it imposed a sentence of total confinement for a technical violation of his

probation and where none of the three criteria set forth in 42 Pa.C.S. §

9771(c) were met. Appellant's Brief at 25. According to Appellant, he did

J-S11006-20

not commit a new crime, his conduct did not indicate that he was likely to commit another crime if he were not imprisoned, and incarceration was not necessary to vindicate the authority of the trial court. Id. at 25-26.

More specifically, Appellant contends that the trial court erred when it emphasized Appellant's use of a racial slur to describe the pastor at Remnant House because "the language was a product of [his] upbringing in an all-white, rural and low-income environment." Id. at 26-29. Appellant further claims that the trial court's finding that Appellant "was attempting to torpedo his placement at Remnant House was unsubstantiated." Id. at 27. Lastly, Appellant asserts that the trial court "wrongly presupposed that [he] would not be able to find alternative housing options" when the trial court had the option of placing him at Farkas House. Id. at 28.

The Commonwealth responds that the trial court did not abuse its discretion when it stated that Appellant was not an appropriate candidate for community supervision. Commonwealth's Brief at 28. The Commonwealth emphasizes that "the [t]rial [c]ourt was well informed about [A]ppellant's rehabilitative efforts in the community before the [c]ourt imposed [A]ppellant's new sentence in this case." Id. The Commonwealth notes that the trial court had the benefit of Appellant's PSI and had presided over Appellant's prior revocation hearings, as well as several other review hearings, and expressed a familiarity with Farkas House. Id. at 27.

A claim that the trial court erred in imposing a new sentence of total confinement is a challenge to the discretionary aspect of the sentence. See Commonwealth v. Schutzues, 54 A.3d 86, 90 (Pa. Super. 2012). Instantly, Appellant preserved this claim in his motion to modify the sentence imposed following revocation. He then timely appealed the claim, and raised it in his Rule 2119(f) statement. Moreover, Appellant's claim raises a substantial question. See Commonwealth v. Crump, 995 A.2d 1280, 1282 (Pa. Super. 2010) (holding that imposing a sentence of total confinement after he revocation of probation for a technical violation presents a substantial question). Therefore, we will address Appellant's claim.

The statute governing the sentencing following revocation of probation provides:

> (c) Limitation on sentence of total confinement.—The court shall not impose a sentence of total confinement upon revocation unless it finds that:
>
>> (1) the defendant has been convicted of another crime; or
>>
>> (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or
>>
>> (3) such a sentence is essential to vindicate the authority of the court.

42 Pa.C.S. § 9771(c). "Technical violations can support revocation and a sentence of incarceration when such violations are flagrant and indicate an inability to reform." Commonwealth v. Carver, 923 A.2d 495, 498 (Pa.

Super. 2007). Under certain circumstances, where probation is ineffective as a rehabilitative tool, a sentence of incarceration may be appropriate. See Malovich, 903 A.2d at 1254 (holding that the trial court properly considered the statutory sentencing factors, prior probation violations, and that the defendant was not responding to the court's authority, accordingly, it did not abuse its discretion in imposing total confinement due to technical probation violations).

Instantly, the trial court explained that it "considered, in addition to the [PSI] Report, [Appellant's] poor supervision history, the fact that Appellant chose not to avail himself of treatment and [that Appellant] routinely exhibited a poor attitude toward his probation officer, other participants in his group therapy, staff at Remnant House and th[e trial c]ourt." Trial Ct. Op. at 6. The trial court remarked that Appellant "was unsuccessfully released from Remnant House after only four days for uttering a derogatory slur relating to the ethnic background of the executive director" and "Appellant has demonstrated that he is not amenable to treatment and supervision in the community." Id. at 6-7.

Our review of the record supports the trial court's conclusion that it considered Appellant's probation history, and other factors as discussed herein, which demonstrated that he was not amenable, nor cooperative with treatment and probationary supervision in the community. Therefore, probation was demonstratively ineffective as a rehabilitative tool for

Appellant and the court imposed incarceration to vindicate the trial court's authority and concern for safe community supervision of Appellant. Previously, Appellant was unsuccessfully discharged from a treatment program and the trial court revoked Appellant's probation and resentenced him to five years' probation. See N.T. VOP Hr'g, 8/20/18, at 2-3, 18. One of the conditions of his probation was placement at Remnant House, which required compliance with mental health and sex offender treatment. Id. at 18. Further, the trial court indicated that it was imposing a condition of "zero tolerance" with respect to the probation conditions, informing Appellant that he must comply with them in order to be safely supervised in the community. The trial court warned that failure to comply could result in the revocation of Appellant's probation and the imposition of a custodial sentence. Id. at 18-20.

At the VOP hearing, the trial court found that Appellant had not availed himself of treatment, missed appointments and medication. N.T. VOP Hr'g, 12/3/18, at 2. The trial court also noted that Appellant had been given several opportunities to remain in the community under supervision, but found that he demonstrated that he was not amenable for community supervision. Id.

Appellant was aware that his probation was conditioned on compliance with his treatment and placement at Remnant House. Appellant was defiant towards Pastor Sutton, was not interested in following the House rules, and

was eventually expelled for using a racial slur to describe Pastor Sutton. N.T. Gagnon I Hr'g, 11/5/18, at 3-7. Furthermore, the instant case is the second time the trial court revoked Appellant's probation.

Based on our review of the record, the trial court did not abuse its discretion when it concluded that Appellant demonstrated that he was not amenable to, nor cooperative with, treatment and probation supervision. Accordingly, probation was not an effective rehabilitative tool for Appellant. See Carver, 923 A.2d at 498; Malovich, 903 A.2d at 1254. Accordingly, we discern no merit to Appellant's claim that the trial court improperly imposed a sentence of total confinement.

Appellant next claims that the sentence of two to five years' imprisonment was excessive because the trial court "did not properly consider the extensive mitigating evidence under [42 Pa.C.S.] § 9721(b) . . . ." Appellant's Brief at 29. Appellant asserts that the trial court could not have properly considered the mitigating evidence because the trial court decided to incarcerate him before hearing any argument or evidence at the VOP hearing. Id.

Moreover, Appellant contends that the trial court "based the sentence on impermissible factors when it falsely characterized or made incorrect assumptions about much of the mitigating evidence that [Appellant] did present." Id. at 30 (citation omitted). Appellant specifically challenges four points referenced by the trial court. First, Appellant asserts that the trial

court incorrectly found that Appellant failed to maintain stable unemployment when there was evidence that he had a successful work history and left jobs for raises, promotions, or better opportunities. Id. Second, Appellant contends that the trial court "incorrectly claimed that [he] could not maintain stable housing, even though he had his own apartment until he was detained" for the present VOP. Id. Third, Appellant challenges the trial court's skepticism regarding his mental health diagnoses and asserts that the trial court "paradoxically claimed" that he was not addressing his mental-health needs. Id. at 30-31.

Lastly, Appellant contends that the trial court ignored his success in his sex-offender treatment and improperly focused on Appellant's failure of a polygraph examination. Id. at 31. Appellant notes that the trial court "repeatedly rejected" his assertions that his bipolar disorder could have affected the results of the polygraph test. Id. Appellant further argues that by punishing Appellant for failing the polygraph test, the trial court ignored the progress that Appellant made and the difficulties that sexual offenders often face in accepting responsibility for their actions.[9] Id. at 31-33.

---

[9] Appellant refers to the trial court's consideration of impermissible factors in his brief. See Appellant's Brief at 30. However, as summarized above, a careful review of his arguments reveals that he does not argue that the trial court relied on an improper fact. Cf. Commonwealth v. Bethea, 379 A.2d 102, 104 (Pa. 1977) (reiterating that a trial court may not punish a defendant more severely because he exercised his constitutional right to stand trial). Rather, Appellant's argument focuses on the reasonableness of
(Footnote Continued Next Page)

The Commonwealth contends that because the trial court was familiar with Appellant and his rehabilitative efforts and because the trial court also had the benefit of Appellant's PSI, "this Court can conclude that the trial court considered all relevant and necessary sentencing factors before sentencing Appellant for his probation violation." Commonwealth's Brief at 28.

Our review establishes that Appellant preserved his arguments regarding the excessiveness of the sentence in his motion to modify, his Rule 1925(b) statement, and his Rule 2119(f) statement. Moreover, we conclude that Appellant's challenge raises a substantial question. See Malovich, 903 A.2d at 1253 (noting that "a claim that a particular probation revocation sentence is excessive in light of its underlying technical violations" presents a substantial question for our review). See Commonwealth v. Swope, 123 A.3d 333, 339 (Pa. Super. 2015) (stating that "[t]his Court has also held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question" (citations and quotation marks omitted)). Accordingly, we will review the merits of Appellant's arguments.

This Court has held that after a trial court revokes probation, the trial court must also consider the sentencing factors contained in 42 Pa.C.S. §

(Footnote Continued) ——————————

the trial court's consideration of legitimate sentencing factors, such as stable housing and employment, as well as mitigating factors.

- 21 -

9721(b) when imposing a new sentence. See Commonwealth v. Cartrette, 83 A.3d 1030, 1040-41 (Pa. Super. 2013) (en banc). Specifically, the trial court must "'follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.'" Id. (citation omitted). Furthermore, we have held that a sentencing court "is required to consider the particular circumstances of the offense and the character of the defendant. In particular, the sentencing court should refer to the defendant's prior criminal record, his age, personal characteristics, and his potential for rehabilitation." Commonwealth v. Edwards, 194 A.3d 625, 637 (Pa. Super. 2018) (citations and quotation marks omitted), appeal denied, 202 A.3d 41 (Pa. 2019).

Where a PSI exists, we shall "presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." Commonwealth v. Conte, 198 A.3d 1169, 1177 (Pa. Super. 2018) (citation omitted), appeal denied, 206 A.3d 1029 (Pa. 2019); see also Commonwealth v. Fowler, 893 A.2d 758, 766 (Pa. Super. 2005) (stating that "[s]ince the sentencing court had and considered a [PSI], this fact alone was adequate to support the sentence, and due to the court's explicit

reliance on that report, we are required to presume that the court properly weighed the mitigating factors present in the case").

Instantly, at the beginning of the VOP hearing, the trial court stated:

> I do have a JRS plan. It is for Farkas House. That is not acceptable to me. I'm quite familiar with Farkas House, and I'm familiar with [Appellant] and his history.
>
> *     *     *
>
> He chooses not to avail himself of treatment or supervision in the community, misses appointments[,] misses medication. He has been given quite a number of opportunities in the community. At this point, I no longer believe that he is appropriate for community supervision.

N.T. VOP Hr'g, 12/3/18, at 2.

When defense counsel raised the point that Appellant began to miss appointments after failing a polygraph, the trial court responded:

> We are not here because of a failed polygraph. He was unsuccessfully released from Remnant House after four days. His volatile behavior is what caused his unsuccessful discharge. We have had Behavior Clinic evaluations. At one point, he indicated that he was having auditory hallucinations. The Behavior Clinic did not believe that he was being candid. He made statements here in court that caused me to refer him to get a Behavior Clinic evaluation.[10] If I recall correctly, the Behavior Clinic found [Appellant] to be malignant.

Id. at 4.

_____

[10] The probation officer asserted that occurred approximately two to three years before the present VOP proceeding. N.T. VOP Hr'g, 12/3/18, at 4.

- 23 -

With respect to steady employment and housing the following exchange occurred at the VOP hearing:

> THE COURT: We have not been able to get him to maintain employment or stable housing. We have not been able to get him to address his mental health needs or his sex offender needs.
>
> [Appellant's Counsel]: He was working before he was placed in jail. . . .
>
> THE COURT: Stable employment and housing has been a problem over a period of time?
>
> [Probation Officer]: Correct, Your Honor.
>
> [Appellant's Counsel]: Even employment?
>
> [Probation Officer]: Stable employment means that he has had a job for more than a year. Our office doesn't consider having multiple jobs at the same -- that is a risk factor actually on our LSI-R[11] that we do for [Appellant's] criminogenic needs. That's just one more need that he has. Without having stable employment for more than a year is a risk factor.
>
> [Appellant's Counsel]: Your Honor, he worked at Bravo and another pizzeria. How long?
>
> [Appellant]: For nine months.
>
> [Appellant's Counsel]: He only left the one place because of a better job.
>
> [Appellant]: Your Honor, when I started, I got $8.50. Then I got $9, then $10. When I left, I was making $11.50. I was wearing a chef coat. They were going to teach me how to be a chef.

Id. at 6.

_____

[11] "LSI-R" appears to refer to a Level of Service Inventory-Revised, which is a tool used to assess a probationer or parolee's level of risk and supervision needs. See generally Barnes v. Wenerowicz, 280 F.R.D. 206, 209 (E.D. Pa. 2012).

Addressing Appellant's use of a racial slur, the trial court noted its personal experience with knowing that the use of the slur was unacceptable. Id. at 8. The trial court explained:

> I would venture to guess that there is not a person alive in this country who is unaware that referring to anyone by a derogatory slur relating to their ethnic background is absolutely unacceptable. You put yourself in this situation. You made the choices that you made, and you have made them over a period of time.
>
> I view your comments here not as personal toward Pastor Sutton in any way but rather as a way to torpedo your placement at Remnant House, and I have nothing left to offer.

Id. at 8-9.

> Subsequently, in its Rule 1925(a) opinion, the trial court stated:

> In sentencing Appellant, the [trial c]ourt considered, in addition to the [PSI] Report, his poor supervision history,[fn3] the fact that Appellant chose not to avail himself of treatment and routinely exhibited a poor attitude toward his probation officer, other participants in his group therapy, staff at Remnant House and this [c]ourt. After an earlier Gagnon 2 [sic] hearing, [the trial c]ourt gave Appellant another opportunity to remain in the community and become a productive member of society by providing him with a JRS . . . plan through which he again agreed to reside at Remnant House. He was unsuccessfully released from Remnant House after only four days for uttering a derogatory slur relating to the ethnic background of the executive director. He failed sex offender mental health treatment and the Behavioral Clinic found him to be malignant, potentially faking auditory hallucinations. In addition to failing to address his conditions, he has failed to maintain stable employment and housing. Appellant has demonstrated that he is not amenable to treatment and supervision in the community.

> > [fn3] Examples of Appellant's non-compliance with probation supervision abound in the record. For example, at his Sex Offense Court ("SOC") review hearings, his probation officer reported that he requires constant refocusing and was rarely in compliance. By November 16, 2015, he had

- 25 -

twice been kicked out of Remnant House. Mercy Gatehouse reported that he minimized his offense and talked down to others in treatment. Subsequent review hearings established that Appellant lacked motivation to gain employment and thought that most work was beneath him. After several compliant reviews, Appellant began to miss therapy sessions and was unsuccessfully discharged from Mercy Gatehouse. Appellant's therapist indicated substantial barriers in therapy, including problems with attendance, honesty, denial, and manipulation.

Trial Ct. Op. at 6-7 (some formatting altered and record citations omitted).

Following our review, we discern no merit to Appellant's argument that the trial court failed to consider mitigating factors. Since the trial court reviewed Appellant's PSI, it is presumed that it was aware of and properly weighed the mitigating sentencing factors. See Conte, 198 A.3d at 1177; Fowler, 893 A.2d at 766.

Moreover, as to Appellant's challenges to the trial court's specific conclusions regarding the stability of Appellant's employment and housing, his mental health condition and need for treatment, and his progress in sex-offender treatment, we find no basis to disturb the trial court. Appellant does not address the concerns and possible risks expressed by the Probation Department based on its definition of "stable employment" as meaning that being with the same employer for at least a year. See N.T. VOP Hr'g, 12/3/18, at 6. Although Appellant refers to the fact that he resided in his own apartment before he was detained in this matter, the record shows that he was expelled from Remnant House after less than a week. Id. at 4-7. Furthermore, the trial court previously revoked Appellant's probation

because he was unsuccessfully discharged from treatment, deemed treatment resistant, and was not compliant with his medications. N.T. VOP Hr'g, 8/20/2018, at 4, 9-11. Lastly, to the extent Appellant argues that the trial court ignored the difficulties sex offenders generally have in treatment, we conclude that the trial court adequately considered Appellant's individualized needs before imposing sentence and did not overemphasize Appellant's failure of a polygraph examination. See Edwards, 194 A.3d at 637; see also Cartrette, 83 A.3d at 1040-41.

Accordingly, having reviewed the parties' arguments, the trial court's explanations for its sentence, and the record, we find no merit to Appellant's claim that his sentence of two to five years' imprisonment was excessive. Accordingly, Appellant's challenge to the discretionary aspect of the sentence fails. See Raven, 97 A.3d 1244, 1253

In sum, we affirm the judgment of sentence in part, and vacate only that portion of the judgment of sentence regarding Appellant's sex offender registration and reporting requirements under Subchapter H. We remand the case to the trial court to impose the Subchapter I registration and reporting requirements of SORNA and to instruct Appellant on those requirements.

Judgment of sentence affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/18/2020